JAMES G. DIBURRO & others *vs.* MICHAEL R. BONASIA.

Essex.   January 9, 1947. — February 4, 1947.

Present: FIELD, C.J., RONAN, WILKINS, & SPALDING, JJ.

*Broker*, Existence of relation.  *Fiduciary.*

In a suit in equity to have the defendant declared a constructive trustee of certain real estate, evidence that, after the defendant, a real estate broker and dealer, had been asked by the owner of the real estate in question to find a purchaser of a restaurant business thereon, he had interviewed the plaintiff as a possible purchaser and had stated that he would himself be interested in a purchase of the real estate if the owner were willing to sell that also, whereupon the plaintiff had "dropped it right there," and that a few days later, after negotiations with the owner, the defendant bought the real estate and the business, warranted findings by the trial judge that there was no fiduciary relation between the defendant and the plaintiff and that the defendant had not been employed by the plaintiff as his broker; and the bill properly was dismissed.

BILL IN EQUITY, filed in the Superior Court on July 17, 1946.

The suit was heard by *Williams*, J.

*G. Karelitz*, for the plaintiffs.

*W. C. McDonald*, for the defendant.

WILKINS, J. This is a bill in equity seeking that the defendant be declared to hold certain real estate and a restaurant as constructive trustee for the plaintiffs and that he be ordered respectively to convey and assign them accordingly. From a decree dismissing the bill, the plaintiffs appealed. The evidence is reported, and the judge, in response to a request for a report of the material facts, adopted as such the facts previously found by him in his "findings and order for final decree." G. L. (Ter. Ed.) c. 214, § 23, as appearing in St. 1945, c. 394, § 1. *Acacia Mutual Life Ins. Co.* v. *Feinberg*, 318 Mass. 246, 247.

We summarize the findings of the judge. Under date of May 23, 1946, the defendant, a real estate broker in Haverhill, received from Mrs. Bettina Joe in Taunton a letter asking him to find a purchaser for her restaurant at 42 Main Street, Haverhill, at a price of $8,000 "beside your commission." The three plaintiffs were partners operating two restaurants in that city. Three or four days later, the defendant, believing that they might like to become purchasers, showed the letter to the plaintiff James G. DiBurro. DiBurro was interested, but suggested that the defendant look into the financial condition of the restaurant and ascertain whether Mrs. Joe would also sell the real estate where the restaurant was situated. On May 28 the defendant wrote to Mrs. Joe, "In reply to your letter of May 23, 1946, we wish to state that we do have a potential customer who is interested in your business. . . . I would suggest that you come to Haverhill at your convenience." The customer referred to "presumably was DiBurro." Later the defendant met Mrs. Joe, learned that she would sell the real estate and restaurant combined at a price, and eventually purchased both himself. "I find no fiduciary relation between the defendant and the plaintiffs. No contract was entered into by virtue of which the defendant was employed by the plaintiffs as broker. Throughout the transaction the defendant continued as broker of Mrs. Joe."

Examining the evidence in accordance with the often stated rule (see *Boston* v. *Santosuosso*, 307 Mass. 302, 331–332, and cases cited), we do not regard this as an

appropriate case for revising the findings of the judge. The evidence consisted almost entirely of the oral testimony of the plaintiff James G. DiBurro and of the defendant. The real estate is a three-story brick building in a business section, with two stores occupied by the restaurant on the first floor, two shops on the second floor, and apartments on the third. The plaintiffs are brothers, and the subject matter of this case seems to have been handled on their behalf by the plaintiff James G. DiBurro (hereinafter called the plaintiff). The defendant not only is a real estate broker, but has made extensive purchases and sales of real estate for himself or his wife. The only time he talked with the plaintiff before the execution of the agreement of sale was on May 27. The defendant first saw Mrs. Joe on June 5, and he next saw her twice on June 11. On the latter date a written agreement of sale to the defendant was executed, and on June 18 a deed to the defendant of the real estate was delivered.

Under the letter of May 23 from Mrs. Joe the defendant was unquestionably her broker at the beginning. The evidence did not require the judge to find that the defendant subsequently became the plaintiffs' broker. Many of the plaintiffs' contentions are founded upon testimony of the plaintiff James G. DiBurro, which the judge did not have to accept. According to the defendant's testimony — which the judge must have believed in large part at least — as soon as the possibility of the purchase of the real estate was suggested on May 27, the defendant informed the plaintiff that, if the building was for sale, he would be interested in it himself; that the plaintiff "dropped it right there"; and that it "was a final talk when he didn't seem too interested to me." The reference to "a potential customer" (who was "presumably" the plaintiffs) in the defendant's letter of May 28 to Mrs. Joe or in his conversation with her on June 5 did not require a ruling that the defendant was the plaintiffs' broker. *Libby* v. *Smith,* 293 Mass. 465, 471. Nor was such a ruling required, to say the least, by the defendant's testimony as to his conversations with Mrs. Joe on June 11. On that day Mrs. Joe asked

$26,000 for a sale of the restaurant and building. The defendant told her that he had had an offer of $20,000, that she should decide upon the lowest figure she would take, and that he would submit a counter offer. Mrs. Joe replied that she would have to obtain $22,000 net to her, and would like to "close the deal" that day. The defendant announced that he would see the customer. After doing so, the defendant again talked with Mrs. Joe, and told her that the customer would not pay $22,000, but that the defendant himself would buy at that price. The agreement of sale was then signed. The customer referred to was not the plaintiffs. The plaintiff James G. DiBurro was not the only one with whom the defendant had discussed the sale.

It is obvious, and, as the plaintiffs contend, it is true, that the defendant was not acting as broker for Mrs. Joe when he became the buyer. But this new relationship could be found to have come into being on June 11 at the final conversation with Mrs. Joe. Such a finding would not be inconsistent with the reasonable interpretation of the judge's finding that "throughout the transaction the defendant continued as the broker of Mrs. Joe."

There is nothing which aids the plaintiffs in the conversations between the plaintiff James G. DiBurro and the defendant subsequent to the agreement of sale, during the course of which the defendant at first denied that he had bought the property and later overstated the purchase price. Nor are the plaintiffs helped by the fact that the defendant caused to be affixed to the deed more than the amount of Federal documentary stamps required by law. That the defendant would not have been interested in purchasing merely the restaurant seems to assist the defendant more than it does the plaintiffs.

We have considered all the contentions of the plaintiffs, none of which can elude the judge's finding, which was not plainly wrong, to the effect that the defendant did not become their broker. We thus do not reach the question whether a constructive trust could arise on the facts which the plaintiffs failed to prove. See, however, *Kendall* v. *Mann*, 11 Allen, 15, 17; *Davis* v. *Wetherell*, 11 Allen, 19,

note; *Barnard* v. *Jewett*, 97 Mass. 87; *Fickett* v. *Durham*, 109 Mass. 419; *Parsons* v. *Phelan*, 134 Mass. 109; *Bailey* v. *Hemenway*, 147 Mass. 326; *Emerson* v. *Galloupe*, 158 Mass. 146; *Bourke* v. *Callanan*, 160 Mass. 195; *Tourtillotte* v. *Tourtillotte*, 205 Mass. 547; *Kennerson* v. *Nash*, 208 Mass. 393, 397; *Southwick* v. *Spevak*, 252 Mass. 354; *McDonald* v. *Conway*, 254 Mass. 429; *Cann* v. *Barry*, 293 Mass. 313, 316.

*Decree affirmed with costs.*