(No. 30598.— ▮▮▮▮▮)

ETHEL WOOD, Appellant, *vs.* JAMES ARMSTRONG, Appellee.

*Opinion filed September 24, 1948.*

JAMES PAUL DELANEY, of Chicago, for appellant.

SAMUEL L. STEINBERG, of Chicago, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is a suit in equity brought in the superior court of Cook County by appellant, Ethel Wood against James Armstrong to establish a constructive trust in an undivided interest in lots 30 and 31 in block 6 of Cushman's subdivision of block 4 of Sheffield's addition to Cook County, which is improved with a rooming and boarding house located at 2017 North Bissell Street, in Chicago. She also asked in her complaint that defendant render an accounting of the proceeds of the premises.

The complaint alleges that for many years plaintiff was engaged in the business of operating a rooming and boarding house on the above premises, and that defendant for more than three years boarded with her, she doing his laundry; that he promised to marry her and for more than two years, while living in the said boarding house with the plaintiff, the defendant failed to pay her any money for his board, room and laundry, fraudulently representing to plaintiff that the amounts of money which should have been paid to her for said room, board and laundry were being applied by him on the purchase of the above-described premises, and that as soon as the property was paid for the defendant would cause it to be placed in joint tenancy with himself and plaintiff as the title holders thereto; that the plaintiff, innocently relying upon the said fraudulent representations of the defendant, made substantial and divers repairs, alterations and improvements in and about and to the said property. It is further alleged in

the complaint that on November 28, 1945, the defendant acquired title to the said premises in his own name by warranty deed, and thereafter continued to live in the home of plaintiff and pay no rent, board or laundry, still representing that they were to be shortly married; that subsequent thereto the defendant moved out and refused to marry her or convey to plaintiff, as promised, an undivided one-half interest in said premises.

The defendant, in his answer, denies that he promised plaintiff he would marry her, or that he ever represented to plaintiff that he would place the property in their joint names, and denies that the plaintiff is entitled to have established a constructive trust or that she is entitled to any relief whatsoever, for the reason that the alleged promises and agreements are in violation of, and repugnant to, the Statute of Frauds, in that they are not evidenced by any writing.

The cause was tried before the court without a jury, and, after a full hearing, was dismissed for want of equity.

Plaintiff's theory of the case is that a fiduciary relationship existed between the parties and that the actions of the defendant constitute fraud; that the Statute of Frauds is no defense to this action and to so hold would be to allow the perpetration of a gross fraud; that by reason of this fraud the property should be impressed with a trust; that plaintiff's performance and her making substantial and valuable improvements upon the property in reliance upon the promises of the defendant constitutes such performance as will take the agreement out of the Statute of Frauds.

Aside from the fact that plaintiff did not raise in the trial court the existence of a fiduciary relationship between the parties and is not now in position to make such claim here, (*Bittner* v. *Field,* 354 Ill. 215; *Hill* v. *Siffermann,* 230 Ill. 19;) we are of the opinion plaintiff has wholly failed to establish by proper proof a fiduciary relationship.

To establish a fiduciary relationship by parol evidence, the proof must be clear, convincing, and so strong, unequivocal and unmistakable as to lead to but one conclusion. *Scherman* v. *Scherman*, 395 Ill. 574; *McGlaughlin* v. *Pickerel*, 381 Ill. 574; *Johnson* v. *Lane*, 369 Ill. 135.

It is urged by plaintiff that the plea of the Statute of Frauds is of no avail for the reason that courts of equity will not permit the Statute of Frauds to be invoked where the effect will be to accomplish a fraud, and the case of *Simpson* v. *Wrate*, 337 Ill. 520, is cited as authority for such statement. Plaintiff also urges that the purpose of the Statute of Frauds is to prevent fraud and a court of equity will not permit the statute to be invoked to accomplish a fraud, citing *Duncan* v. *Dazey*, 318 Ill. 500, 525. There can be no doubt that this is a correct proposition of law which has been recognized by this court in many cases.

The question here, however, for determination is whether or not such proof has been made which shows it would be a virtual fraud to permit the defendant to interpose the statute. We have gone over the evidence carefully in this respect, and find that it is not only conflicting, but in many instances confusing and inconsistent, presenting a relationship between the parties not to be approved, which could only lead to disagreements and misunderstandings; and that the evidence falls far short of the necessary proof to establish fraud.

Neither are we of the opinion that the evidence as adduced here is sufficient to establish a constructive trust in the Bissell Street property as contended by plaintiff.

Plaintiff testified that she met the defendant about twelve years prior to the trial when he was living in her flat upstairs, around the year 1931; that she continued to meet him almost every night for years thereafter; that during this period she admonished him about his drinking, and when she sobered him up and cleaned him up he would go out and get drunk again; that he paid nothing for

room and board during this time; that he went back to work for the first time in 1942, and started to board at her place at that time and continued to do so for two years and ten months; that during this time she did his laundry for him without charge; that he later came to live at her house as a roomer on August 31, 1945; that he asked her many times to marry him and she told him she would do so if he would sober up and be a man. She testified that from August 31, 1945, to September, 1946, he lived in her house in a room by himself, had three meals a day and she did all his laundry for him for which she received no compensation; that she loaned him about $300 during this time; that he told her he was going to buy the building and this money should go in the building as the building belonged to her the same as him. She further testified that she took a man in by the name of Scotty, who worked around the house doing repair work and that she helped him; that she paid him $92 in cash and roomed and boarded him for the work he did around the house.

On cross-examination, plaintiff testified that defendant did not live there at first, but ate and slept there for the last twelve years, and that he was never sober for eight years and she did not charge him at that time because he did not have any money.

Other witnesses testified as to the defendant living there and as to his eating meals and living on the premises, and as to seeing people doing repair work about the place. One witness, not related to the plaintiff, testified she had known the parties for about four years and that around Thanksgiving of 1945, defendant told her he bought the property for plaintiff because she was awfully good to him for many years and did a lot of favors and did his washing, etc.

The defendant testified that he met the plaintiff in 1933, roomed at her house paying her $9 a week room rent, and that he did not see her again until 1938, and during this time he did not live in her house or board there; that he

started to work in 1941 at the Seminary and left there in August, 1945, after which he moved back to plaintiff's house; that prior to this time he had not lived at plaintiff's house nor had any meals there; that he bought the building in controversy in September or October of 1945 and paid cash for it, $3100; that he moved into the building in 1945, living in a room off the kitchen in plaintiff's flat and that he paid a friend, an engineer, around $255 or $300 to do plumbing work; that he took all of his meals at his sister's and the Seminary restaurant; that he never promised to buy plaintiff the building, never promised to marry her, never owed her any money and that she never gave him any money.

Plaintiff testified that she spent over $213 for materials, which she used for repairs on the house and which she bought after defendant purchased the premises, while defendant testified that after he purchased the building he moved in the rooming house in order to make repairs to the building; that he stayed in one room of the flat, did a great deal of repair work about the premises and spent about $1300 or $1400 for material about the building; that he did all the work, put in the sidewalk in the back of the house, mixed the cement with the help of an engineer, who also did all of the plastering. The engineer, called as a witness for the defendant, testified that he helped put in the sidewalk, that it took him and the defendant four or five months working five nights a week to do all the repair work around the house, for which he was paid around $300; that Mrs. Wood was around but she was more in the way.

It is plaintiff's contention that the defendant represented to her that he was applying the board money that he should have paid her over a period of two or three years toward the purchase of the property. Her testimony is not at all definite as to this particular arrangement, or as to the particular years and months he agreed to apply the board money on the purchase price of the premises. The

testimony discloses that in 1931 he became a roomer in the Bissell Street property, she receiving no compensation for his board. In fact, on cross-examination, she stated, "Up to November, 1945, I did not ask him for any money for either board or laundry." She testified that the first time she found out defendant desired to purchase the property was about the middle of May, 1945. The property was purchased December 12, 1945, and if her testimony is correct that up to November, 1945, she did not ask him for any money, even though she knew in May he was going to purchase the property, it is not clear, by any means, to what extent the board money was to be applied on the purchase of the premises. A sister of the defendant testified that he boarded with her from 1940 to the present time and that she had been doing his laundry during that period.

The probative value of such testimony is apparent, and in all of its phases it is insufficient to establish a constructive trust as contended for by plaintiff. In the case of *Neagle* v. *McMullen,* 334 Ill. 168, at page 175, this court said: "Where it is sought to establish a constructive trust by parol evidence the proof must be clear, convincing, and so strong, unequivocal and unmistakable as to lead to but one conclusion. Many of the cases hold that the proof must be clear beyond a reasonable doubt. If the evidence is doubtful or is capable of reasonable explanation upon theories other than the existence of a trust it is not sufficient. (*Niland* v. *Kennedy,* 316 Ill. 253; *Conroy* v. *Conroy,* 313 Ill. 177; *Winkelman* v. *Winkelman,* 307 Ill. 249; *Baughman* v. *Baughman,* 283 Ill. 55; *Ryder* v. *Ryder,* 244 Ill. 297.) To establish a constructive trust there must be some element of fraud, either positive or constructive, which existed at the time of the transaction, or there must be a confidential relation and undue influence, by virture of which one has obtained the legal title to property which he ought not to have secured under the rules of equity and good conscience. (*Streeter* v. *Gamble,* 298 Ill. 332.) The

mere breach of the grantee's oral promise does not constitute such fraud as takes the case out of the Statute of Frauds. (*Delfosse* v. *Delfosse,* 287 Ill. 251; *McHenry* v. *McHenry,* 248 Ill. 506.)"

An analysis of all the testimony in this case reveals many other inconsistencies as to the transactions between the parties. It was necessary for plaintiff to prove a constructive trust by such clear, convincing, strong, unequivocal and unmistakable evidence as to lead to but one conclusion. Such proof, in our judgment, is not shown by this record.

For the foregoing reasons the decree of the superior court of Cook County is affirmed.

*Decree affirmed.*