**213 P.2d 231**

**MITCHELL v. ALLISON.**

**No. 5201.**

Supreme Court of New Mexico.

Dec. 19, 1949.

Rehearing Denied Dec. 31, 1949.

E. E. Young, Roswell, for appellant.

O. O. Askren, Roswell, for appellee.

BRICE, Chief Justice.

This is the second appeal of this case. 51 N.M. 315, 183 P.2d 847. The trial court in the original action dismissed the complaint upon the ground that it stated no cause of action.

The complaint stated in substance, as follows:

The defendant is a real estate broker. During the month of June, 1945, plaintiff was "approached by defendant Allison with reference to buying said property" (the property in suit) from the owner, who resided in California. The plaintiff advised the defendant that he would buy it for $3 per acre "and after further conference, defendant offered to act for plaintiff and secure a deed for the land, free of encumbrances, for $3 per acre, from the owner." Plaintiff accepted the offer and authorized the defendant to negotiate with the owner and procure a deed from him to plaintiff. The land was a desirable purchase for plaintiff at said price ($3 an acre) "and even a higher price." The defendant disregarded his duties to the plaintiff and negotiated a purchase for himself, and placed in the deed the name of one Shearman for the purpose of fraudulently retaining the mineral rights in the land. At that time the defendant knew the mineral rights could be sold for $3 an acre and "in said transaction defendant dealt for himself and double-crossed both the owner and this plaintiff." The defendant as a broker, attempted to serve both the seller and the buyer without a disclosure of his conduct in the matter, and to procure for himself the mineral rights, and by such self-dealing beat both the seller and his client (the plaintiff) out of the price of such mineral

rights. The plaintiff was damaged in the sum of $1600.00. By a bill of particulars asked for by defendant, plaintiff stated that the contract was oral and that plaintiff agreed to compensate the defendant for his services as purchasing agent, with payment of the customary commission therefor.

■ It was held by this court on the first appeal that the allegations above recited stated a cause of action, and this is the law of the case. First Nat'l Bank of El Paso v. Cavin, 28 N.M. 468, 214 P. 325. The case was tried to a jury, which returned a verdict in favor of plaintiff for $960.00, in which amount judgment was entered. From this judgment defendant has appealed.

■ It is asserted that the plaintiff did not prove facts that would support this judgment. If facts proved establish the above allegations, then the plaintiff is entitled to recover, whether the law of the case, as we have stated it in the first opinion, is right or wrong. In other words, if the plaintiff proved the facts alleged in his complaint, he was entitled to his judgment.

There is substantial evidence that supports the following facts:

In June 1945 (no specific day was stated) plaintiff employed the defendant, who at the time was a real estate broker, to purchase for him the land in question, including all mineral rights; and agreed to pay therefor as much as $3 per acre. It was agreed that plaintiff would pay defendant the usual commission, which was five percent of the purchase price. The defendant said he would see what he could do. At that time the defendant was the agent of the owner, Dr. Konigmacher of Fresno, California, for the sale of this property, but this was not disclosed to plaintiff, nor did Dr. Konigmacher know that defendant was also agent for plaintiff to negotiate a purchase for the land.

On the 29th day of May, 1945, the owner of the property (Dr. Konigmacher) sent by mail an abstract of title, and a deed conveying this property to one Dale Shearman, to the First National Bank of Roswell, with instructions to deliver them to defendant upon the payment of $1164. The documents were in the bank on June 8, 1945, if not sooner. Nothing was said to plaintiff about this situation at the time he employed the defendant to buy the property for him. Shearman was a partner of the defendant and the property was being bought for the two of them jointly. Defendant never advised the owner that Shearman was buying the property for both defendant and Shearman.

On July 7, 1945, the plaintiff made an abortive attempt to buy the property from Dr. Konigmacher directly, at $3 per acre.

Later in July, Allison paid the First National Bank of Roswell $1164 and received the abstract and deed. Thereupon defendant offered to convey the land to plaintiff, reserving to grantor the mineral rights for $3 per acre, which offer plaintiff rejected, and this suit followed. There is no direct testimony whether plaintiff would have paid $1164 for the land and abstract. We are satisfied from Dr. Konigmacher's letters that he would not have sold it for less. Defendant fixed the value of the surface in his offer to plaintiff, at $3 per acre.

It was stipulated by the parties that the deed records of Chaves County show that Dr. Konigmacher deeded the land in question to Dale Shearman; that Dale Shearman deeded the land, reserving all minerals, to Charles E. Ritter; that Dale Shearman deeded to plaintiff a one-half interest in the minerals, and that Shearman and Allison leased the mineral rights to the Richfield Company. There was testimony to the effect that the mineral rights were worth at that time from $2.50 to $4 an acre. The land (including minerals) assuming it was a full half section, was bought by Shearman and defendant for $3.325 per acre, plus $100 for an abstract of title, a total of $1164.00.

■■ One employed as a real estate broker to purchase property for another is prohibited from purchasing the property for himself, Mitchell v. Allison, 51 N.M.

315, 183 P.2d 847; Bachrach v. Fleming, 269 Pa. 350, 112 A. 445; Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 54 A.L.R. 1173. It is held that a selling broker cannot sell to a partner, Baird v. Conover, 66 Okl. 288, 168 P. 997, without a disclosure of the facts to his principal, and without securing his consent thereto; and the same rule should apply to one employed to buy property.

■■ After the purchase of this property, it was held by defendant and Shearman as constructive trustees for plaintiff.

"A person in a fiduciary relation to another who purchases property for himself individually may be chargeable as constructive trustee of the property, even though he purchases it from a third person and not from himself as fiduciary. He is chargeable as a constructive trustee where he purchases for himself individually property which he should purchase for the beneficiary * * *." 3 Scott on Trusts, Sec. 499.

■ But it is said that the property could not have been bought for $3 per acre, the maximum price fixed by plaintiff. The defendant was under a duty to have informed plaintiff of this fact, and to inform him the price asked by the owner, and thus have given him an opportunity to purchase at the seller's price. Quinn v. Phipps, supra. From the value placed on the land by the plaintiff, jury, and witnesses, we are

satisfied plaintiff would have bought at the increased price if he had been given that opportunity, to which he was entitled.

The land and mineral rights were sold to others, leaving plaintiff only the remedy of an action at law. The evidence supports the allegations of the complaint, which we have held states a cause of action.

It should be stated that the defendant denies that he was ever plaintiff's agent, and supported his case by persuasive testimony; but the jury elected to accept plaintiff's evidence upon the question.

■ It is asserted that plaintiff made no demand upon defendant for payment of damages in this case, prior to bringing suit and that such demand is required by Sec. 53-703, N.M.Sts.1941, which is as follows: "No contract for labor, or for the payment or delivery of property in which the time of performance is not fixed, can be converted into a money demand until a demand of performance has been made and the maker refuses, or a reasonable time is allowed for performance." Assuming that this action comes within the statute, the question was not raised in the district court and will not be considered by us for that reason.

Also, it is said that the trial court erred in giving to the jury instruction number 7. No exception or objection was made to this instruction. The trial court was not advised of the error, if indeed it was an error, so that he could correct it.

■ The orderly administration of law and the expeditious trial of cases require definite rules of procedure in appellate practice, and that they be enforced without favor. Unless the trial court's attention is called in some manner to the fact that it is committing error, and given an opportunity to correct it, cases will not be reversed because of errors which could and would have been corrected in the trial court, if they had been called to its attention. In the hurry of trial work such errors are common, and one who is not satisfied with a ruling of the trial court should call to its attention the fact that it may be committing error, thus giving an opportunity to correct the ruling, if, in the light of the objection or exception, it should conclude that such ruling was error. It is, therefore, a general rule that the failure to so advise the court is a waiver of the right to object or present such question for review in the supreme court and it is provided for by supreme court rule XX, 1941 Comp. § 19-201, as follows:

"1. None but jurisdictional questions shall be first raised in the Supreme Court.

"2. Formal exceptions shall not be required in any case, but to preserve the question for review it must appear that a ruling or decision by the trial court was fairly invoked."

Notwithstanding Rule XX the supreme court, in the interest of justice, has not limited to jurisdictional questions those that can be first raised in the supreme court. In Candelaria v. Gutierrez, 30 N.M. 195, 230 P. 436, it was said that there were three exceptions to the general rule, to-wit: (1) Jurisdictional questions; (2) Questions of a general public nature affecting the state at large, and (3) questions affecting the fundamental rights of a party. Also see Kemp v. Williams, 30 N.M. 299, 232 P. 1078; Springer Ditch Co. v. Wright, 31 N.M. 457, 247 P. 270. Whether coming within the three exceptions stated in the Candelaria case, we need not pause to consider, but the supreme court has also held that the general rule does not apply in the following cases: When the judgment appealed from is inherently and fatally defective, State ex rel. Burg v. Albuquerque, 31 N.M. 576, 249 P. 242; where a person is convicted and sentenced to imprisonment for a term of years without evidence to support the verdict of the jury, and the evidence conclusively established his innocence. State v. Garcia, 19 N.M. 414, 143 P. 1012; the question of the constitutionality of a criminal statute for the violation of which a person has been convicted and sentenced to the penitentiary. State v. Diamond, 27 N.M. 477, 202 P. 988, 20 A.L.R. 1527.

Subject to the exceptions stated, questions, points and issues not raised, presented or passed upon by the trial court are not reviewable on appeal. Thomas v. Johns, 35 N.M. 240, 294 P. 327.

The judgment of the district court should be affirmed, and it is so ordered.

LUJAN, SADLER, and COMPTON, JJ., concur.

McGHEE, J., did not participate.

On Motion for Rehearing

BRICE, Chief Justice.

On motion for rehearing defendant asserts that we refused to pass upon two material questions raised in his brief. This seems to be correct, and they will now be considered.

It is said that this action was prematurely brought because no demand was made upon defendant for performance prior to the filing of this suit, as required (as it is asserted) by the following statute: "No contract for labor, or for the payment or delivery of property in which the time of performance is not fixed, can be converted into a money demand until a demand of performance has been made and the maker refuses, or a reasonable time is allowed for performance." Sec. 53-703, N.M.Sts.1941.

We are of the opinion that the statute has no application to this action. It is not claimed or argued that this is an ac-

tion on a contract for labor. The contention is that the plaintiff was required by the statute quoted, to make demand upon defendant to execute to plaintiff a deed to the property before he could legally be sued.

But there was no contract between the plaintiff and the defendant for the "delivery of property in which the time of performance is not fixed". Indeed, there was no contract at all between plaintiff and defendant regarding the conveyance of property. This is an action for damages for alleged fraud. If defendant had not sold the mineral rights he might have been compelled to convey the property to plaintiff as a trustee ex maleficio, but he did not contract to do so. No such demand was necessary as a prerequisite to bringing suit.

It is said that the trial court erred in giving to the jury instruction No. 7. The first part of this instruction is a somewhat involved statement of abstract propositions of law regarding the duties of a real estate broker to his principal. These were followed by their application to the facts of this case, in the following language:

"In deciding this case, I therefore charge you that if you believe from a preponderance of the evidence that the plaintiff employed the defendant as a broker to purchase the land in question from the owner for the plaintiff, as claimed by him, and if the defendant did not act in good faith with the plaintiff as his duty was to act as hereinbefore explained to you, then I charge you that you should find the issues in favor of the plaintiff and assess his damage in such sum as you deem proper but not to exceed the sum of $1600.00.

"I further charge you that if the plaintiff has failed to establish the alleged contract by a preponderance of the evidence, or if he has failed to establish the alleged unfaithful conduct and alleged unfair dealing on the part of the defendant, then and in that event you should find for the defendant."

The first objection to this instruction is in substance that there was no substantial evidence indicating the defendant's bad faith. The evidence on this question was reviewed by us in the original opinion and disposed of by a holding against this contention. We find no reason to reconsider it.

The second objection is as follows: "The instruction is misleading in stating to the jury the abstract proposition of law that a broker is not permitted to advance his own personal interests by discharging the duties of his position in the matter, to make a secret profit for himself and that the rule precludes a broker from taking secret interest in a contract which he is authorized to negotiate."

The abstract propositions of law mentioned are not attacked as being incorrect; and while it would have been better practice to have applied the law specifically to the facts of this case without the unnecessary and lengthy statement of abstract propositions of law, we are of the opinion that it was not reversible error to do so, if they did not mislead the jury. 53 A. J. "Trial" Sec. 573. It has been held that this is so even when they are outside the issues; providing the jury is charged that the plaintiff cannot recover unless he had established the facts necessary to a recovery, as the jury must have found in this case. Wren v. Seattle, 100 Wash. 67, 170 P. 342, 3 A.L.R. 1123. We are satisfied that the jury was not misled by the instruction. The trial court did not err in the particulars stated, by giving instruction No. 7.

It is asserted that this court did not expressly dispose of the question raised by the defendant as to whether there was an enforceable contract between the litigants. We think the disposition made of the case indicates our holding that there was substantial evidence of a contract between the parties, whereby the defendant was employed to purchase for plaintiff certain property and that defendant bought the property for himself and another, which, if he did so act, was bad faith. Whether there was bad faith was a question for the jury, not for this court, to decide.

The motion for rehearing should be denied, and it is so ordered.

LUJAN, SADLER, and COMPTON, JJ., concur.

McGHEE, J., did not participate.