**JACOBY v. SHELL OIL CO.**

No. 10563.

United States Court of Appeals,
Seventh Circuit.

May 23, 1952.

Rehearing Denied June 25, 1952.

Harold G. Talley, Alton, Ill., for appellant.

Robert A. Stephens, Jr., Springfield, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

Plaintiff brought this action seeking damages and equitable relief. Count 1 of the amended complaint is for damages for breach of a written lease or for breach of an oral agreement to make such lease; Count 2 is in tort for damages for alleged

wrongful refusal of defendant to perform said lease agreement or agreement to make said lease and for defendant's wrongful conduct in violating a fiduciary duty owed by defendant to plaintiff; Count 3 seeks a declaration of a constructive trust in certain real estate located in Alton, Illinois, and for specific performance of said lease agreement.

Plaintiff is an experienced practicing attorney, located in Alton, Illinois, and in April, 1950, and for a period thereafter, had funds available for investment. Richard Swettenham was a salesman for defendant, part of whose duties was to promote new service station locations. He worked under Russell Hahn, who was defendant's real estate representative in the area known as the Wood River District. Robert S. Mitchell was division manager of the St. Louis Division of defendant, which included the Wood River District.

In April, 1950, Swettenham approached plaintiff with reference to the purchase of real estate in Alton, Illinois, as a location for the erection of a filling station. After several talks with plaintiff, on July 6, 1950, Swettenham brought Hahn to plaintiff's law office, at which time discussion was had on the basis of the plaintiff purchasing real estate in Alton, building a filling station thereon, and thereafter leasing same to defendant. Plaintiff expressed his interest in such a deal.

For some time previous Hahn and Swettenham had in mind a location in Alton at State and Mather Streets. The title to the property was in an estate, but by July, 1950, the estate had been settled. Hahn and Swettenham spoke to a representative of the owners and obtained a purchase price figure of $24,000 and then informed plaintiff of their negotiations. On September 7, 1950, for a consideration of $200, Hahn and Swettenham obtained in the name of defendant an option to purchase said premises. On September 9, 1950, at the suggestion of Hahn, plaintiff addressed a letter to Mitchell, making an offer to defendant relative to acquiring the State and Mather location and the leasing to defendant of a filling station to be erected

thereon. Plaintiff did not receive an answer, and on September 28, 1950, wrote to Mitchell withdrawing the offer contained in his letter of September 9.

On October 16, 1950, plaintiff again wrote to Mitchell stating, "A conference has just been concluded between your Mr. Hahn, Mr. Swettenham and the writer. Unfortunately, we did not come to an agreement with reference to a prospective filling station lease at State and Mather Streets, Alton, Illinois. In my letter to you under date of September 9, 1950, I agreed to pay Shell Oil Company the sum of $100.00, being half of the option paid the landowners in the event the option was not exercised due to my fault." After mentioning the fact that his offer of September 9 had been cancelled by his letter of September 28, plaintiff wrote, "If you are interested in transferring the option to me for $200.00, I shall also be glad to hear from you and, if this is done, be glad to agree with you that the option shall not be used in any way by which the land in question would be used as a filling station in competition to those of your company." Mitchell did not answer this letter.

During the period from July, 1950, to December 6, 1950 (on which latter date the second option was obtained by defendant), Hahn and Swettenham frequently conferred with plaintiff as to the terms pursuant to which plaintiff would be willing to acquire title to the State and Mather location, erect a filling station thereon, and rent the property to defendant. Although various other terms were discussed from time to time, plaintiff insisted on these: a firm 20 year term; a net rental of $265 per month, Shell to be obligated to pay all taxes, insurance, and other expenses of upkeep; and Shell to pay any construction and equipment costs in excess of $25,000 to build the new station.

Hahn obtained printed forms of leases customarily used by Shell and incorporated therein the terms to which plaintiff had stated he would agree, and on October 25, 1950, Hahn submitted the document to plaintiff who, after a day or two, signed it knowing at that time that it would have

to be sent to higher officials (management) of Shell for approval and execution.

Shortly after plaintiff had signed the proposed lease agreement, Hahn, without consulting his superiors, got together some plans, specifications and blueprints which Shell had utilized for the construction of other filling stations, and submitted same to various contractors in the Alton area, soliciting bids. In the transmittal letter prepared by Hahn appeared, "The owner constructing the proposed service station is Mr. Virgil Miller Jacoby of Alton, Illinois."

On December 29, 1950, defendant's officials at New York rejected the proposed lease which had been forwarded to them by Mitchell who had recommended that it be accepted. On January 22, 1951, Hahn notified plaintiff orally of the rejection of the proposed lease, and a formal notice was sent to him by registered mail. On January 29, 1951, defendant exercised the second option and took title to the premises in question, in its name.

The trial court filed a memorandum opinion in which it stated it was unable to award plaintiff relief upon any of the 3 counts of the complaint, that the transactions between the parties constituted neither a lease of the premises in question nor a contract for a lease. The trial court said, "I cannot find in our case that we have even a promise to make a lease on behalf of Shell by those authorized to speak." The court also held that the evidence fell short of creating any liability under Counts 2 and 3. The court filed appropriate findings of fact and conclusions of law. From the judgment dismissing the complaint this appeal was taken.

When plaintiff signed the proposed lease he knew it contained the provision, "This lease shall be binding upon Shell only when signed on its behalf by its Division Manager or other officer duly authorized by Shell's Board of Directors." Plaintiff does not claim that the paper was ever signed by Mitchell, the division manager, or any other person authorized by Shell's Board of Directors. In the Shell organizational set-up the division manager was not authorized to accept a lease for Shell for a longer term than 15 years without first submitting the proposed lease to higher officials in Shell's head office in New York. Mitchell followed that course and although he personally recommended that Shell accept the proposed lease, his superior officers decided not to agree to it. We think the district court correctly held that the negotiations and transactions between the plaintiff and the defendant did not constitute a lease or a contract for a lease.

In urging that a fiduciary relationship existed between plaintiff and defendant, and in seeking to have a constructive trust declared, plaintiff argues that Hahn acted as plaintiff's agent in negotiating the options and later in the acquisition of title to the property at State and Mather Streets in the name of Shell, and that equity raises a constructive trust for the benefit of plaintiff. This contention is without merit, because the premise upon which it is based does not exist in this record. The evidence does not disclose that Hahn was plaintiff's agent or that a fiduciary relationship existed.

Undoubtedly Hahn was anxious to see the deal go through and worked earnestly to that end. He volunteered to assist plaintiff by getting the plans and specifications together and by contacting building contractors. But such voluntary activities did not establish that Hahn was plaintiff's agent in obtaining the options. Plaintiff knew throughout the negotiations that Shell took the options in its name, and paid the consideration therefor, totaling $400. Plaintiff never put up any money to purchase the options, and his letters clearly demonstrate that at that time he did not consider himself as the owner of the options. Plaintiff did nothing else to change his position except perhaps to make some preliminary plans for borrowing whatever additional money would be required if he eventually purchased the real estate and constructed the filling station. Plaintiff was and is an experienced attorney, and understood the meaning of the language contained in the op-

tions and the proposed lease. The negotiations were an arm's length transaction.

Proof to establish a constructive trust must be clearly convincing and so strong and unequivocal as to lead to but one conclusion. If the evidence is doubtful or capable of reasonable explanation upon a theory other than the existence of a trust, it is not sufficient to support a decree declaring and enforcing the trust. Catherwood v. Morris, 345 Ill. 617, 636, 178 N.E. 487; Winkleman v. Winkleman, 307 Ill. 249, 138 N.E. 637; Streeter v. Gamble, 298 Ill. 332, 131 N.E. 589, 23 A.L.R. 1485. See also: Chain O'Mines, Inc. v. United Gilpin Corp., 7 Cir., 109 F.2d 617, 622. The rule is similar where an attempt is made to establish by parol evidence a fiduciary relationship as the basis of a constructive trust. In Wood v. Armstrong, 401 Ill. 111, 114, 81 N.E.2d 468, 470, 472, the court said, "To establish a fiduciary relationship by parol evidence, the proof must be clear, convincing, and so strong, unequivocal and unmistakable as to lead to but one conclusion."

From what we have said, it follows that plaintiff has not made a showing entitling him to specific performance. The findings of fact made by the trial court are amply sustained by the evidence. The conclusions of law were in accord with established legal principles in Illinois. Judgment affirmed.