Benjamin FUNK and Betty Lou Funk,
Plaintiffs-Appellants,

v.

Ward TIFFT d/b/a the Tifft Agency
and Pendor-Idaho Corporation,
Defendants-Appellees.

No. 73–1785.

United States Court of Appeals,
Ninth Circuit.

Jan. 22, 1975.

As Amended on Denial of Rehearing
May 28, 1975.

**24**

Stephen Bistline (argued), Sandpoint, Idaho, for plaintiffs-appellants.

Hardy C. Lyons (argued), Sandpoint, Idaho, for defendants-appellees.

Before LUMBARD,* MERRILL and WRIGHT, Circuit Judges.

OPINION

LUMBARD, Circuit Judge:

Plaintiffs Benjamin and Betty Lou Funk appeal from a judgment of the District Court of Idaho entered on November 10, 1972, by J. Blaine Anderson, J., dismissing their complaint. The principal issue presented by this diversity of citizenship case is whether a licensed real estate broker in Idaho owes a fiduciary duty to a prospective buyer not to purchase a tract of land for himself while his prospective buyer's offer to buy that land is outstanding. The district court found that there had been no breach of duty and refused to impose a constructive trust in favor of plaintiffs. We reverse.

In 1968, defendant Ward Tifft was a licensed real estate broker doing business as the Tifft Agency in Sandpoint, Idaho. On August 22, 1968, the plaintiffs, Benjamin and Betty Lou Funk, who were residents of California, came into the Tifft Agency and asked to see some property. Salesman Ron Fillion showed them the Godfrey property, which is the subject matter of this suit. The following day the Funks made out a check for $100 to the Tifft Agency as an earnest money deposit and signed an agreement to purchase the property for $30,000, with $1,000 to be paid upon acceptance of the offer followed by payments of $100 per month for fifteen months, followed by a lump sum payment of $5,000 and payments of $150 per month thereafter.

On August 26th, Tifft mailed the Funk offer to Mrs. Carlock, the daughter of the owner. Mrs. Carlock, who lived in Florida, had a power of attorney from her father which authorized her to act with respect to the property. Two days later and before Mrs. Carlock received the Funk offer, Tifft called Mrs. Carlock and advised her that he, Fillion and a Mr. Kahn were mailing her an offer for $30,000, with $6,000 down and payments of $300 per month.

* The Honorable J. Edward Lumbard, United States Circuit Judge, Second Circuit, sitting by designation.

A month later, in response to a telephone call from the Funks, Tifft returned their $100 and informed them that their offer had been rejected. He did not tell them that he, Fillion, and Kahn had purchased the property.

Kahn, Fillion, and Tifft formed the Pendor-Idaho Corporation on October 23, 1968. Kahn received 51% of the stock, and Tifft and Fillion split the remaining 49%. Tifft was a director and president of the corporation. The deed to the Godfrey property was granted to the corporation.

When the Funks returned to Idaho in 1970, they learned who had purchased the property, and they sued to have Pendor-Idaho declared a constructive trustee and to obtain other relief. The district court found for the defendants and asked their counsel to prepare findings of fact and conclusions of law.

While it is agreed that Idaho law governs, the Idaho Supreme Court has never ruled on the duty that a realtor owes a prospective buyer. Consequently we must distill from the decisions of other jurisdictions the principles which we believe the Idaho courts would apply.

Most modern cases dealing with the relationship of a broker and a buyer impose a duty of fairness and honesty on the broker. One of the leading cases, Quinn v. Phipps, 93 Fla. 805, 113 So. 419 (1927), held that when a person undertakes to act as an intermediary between the seller and a prospective buyer of a parcel of land, he becomes a constructive trustee for the benefit of the prospective buyer if he purchases the land from the seller for himself without advising the prospective buyer of his actions. See also Mitchell v. Allison, 51 N.M. 315, 183 P.2d 847 (1947), 54 N.M. 56, 213 P.2d 231 (1949); Stephenson v. Golden, 279 Mich. 710, 276 N.W. 849 (1973). Cf. Ward v. Taggart, 51 Cal.2d 736, 336 P.2d 534 (1959).

These cases are consistent with the testimony of two Idaho real estate brokers who stated at trial that a realtor who acts as an intermediary between a seller and a prospective buyer has a duty not to compete secretly with and outbid the prospective buyer when that buyer has made an offer on a piece of property and signed an earnest money purchase agreement. The trial judge found that Tifft did not breach his duty to the Funks when he outbid them without their knowledge.[1] However, the legal conclusions of the district court are not binding upon us. Stevenot v. Norberg, 210 F.2d 615, 619 (9th Cir. 1954). We think that it is clear on the facts outlined above that Tifft did breach the fiduciary duties he owed the Funks. When a real estate broker acts as an intermediary between a seller and a prospective buyer, he is under a duty to deal fairly and honestly with the prospective buyer. That duty is breached when the real estate agent outbids the prospective buyer without notice to him before the seller has acted on his offer. Our holding obviously benefits the prospective buyer, but it is important to note that the seller is also better served by this rule. If the real estate agent sends his own offer to a seller without notifying the prospective buyer, the seller is deprived of the possibility that the prospective buyer might better the agent's offer.[2]

1. The trial judge stated from the bench in announcing his tentative findings that Tifft owed a duty of fairness and honesty to the Funks, but the findings of fact prepared by defense counsel, and reworked by the district judge, concluded that Tifft did not owe any fiduciary duties to the Funks.

2. Pendor-Idaho in its petition for rehearing argues that our decision is contrary to public policy. We do not see how. We are merely giving force to the standards of the Idaho real estate profession. Tifft should have followed the normal and proper practice.

Tifft failed to make adequate disclosures to the Funks and such disclosures should be required. This sort of disclosure requirement finds its analogy in many areas of our law today, especially in statutory enactments designed to protect the unknowing individual from the professional. See, e. g., Truth-in-Lending Act, 15 U.S.C. §§ 1601–65; Securities Act of 1933, 15 U.S.C. §§ 77a–77aa; Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701–20.

■ The district court refused to impose liability on the defendants because it felt that Kahn, not Tifft, was the principal offeror in the second offer and because it found no "malice or legal wrongdoing" involved in Tifft's actions. We do not agree. Tifft was director and a 24.5% stockholder of the corporation that bought the land. The lack of malice is irrelevant; there is sufficient "legal wrongdoing" in Tifft's breach of his fiduciary duty.[3] Suffice it to say that Tifft's involvement tainted the actions of his fellow stockholder and those of the corporation.

■ Idaho has long recognized the constructive trust as the appropriate remedy when a fiduciary violates his duties and takes property for his own use. Reid v. Keator, 55 Idaho 172, 39 P.2d 926 (1934). Here the Funks established the essential elements required for imposition of a constructive trust—the existence of a fiduciary relationship, its breach, and the wrongful acquisition of the land by the breacher, 89 C.J.S. Trusts § 158 (1955). The only remaining question is whether it is appropriate to impose a constructive trust on the Pendor-Idaho Corporation since Tifft only has a 24.5% interest in it. However, if the corporation took title to the Godfrey property with knowledge of Tifft's breach of his fiduciary duty, the corporation is not a bona fide purchaser and a constructive trust can be imposed in favor of the Funks. See Fenton v. King Hill Irrigation District, 67 Idaho 456, 186 P.2d 477 (1947). Since Tifft was president of Pendor-Idaho, as well as a director and owner of 24.5% of its stock, the corporation had notice of his actions.[4] New England Natl. Bank v. Hubbell, 41 Idaho 129, 238 P. 308 (1925). Thus, the corporation was not a bona fide purchaser, and a constructive trust should be imposed against the corporation in favor of the Funks.

On remand the district court should order transfer of the Godfrey property to the Funks upon their tender to the Pendor-Idaho Corporation of the money and/or other consideration which it paid to the seller and their assumption of any

---

3. The district court also stressed its belief that the Funks could not have matched or bettered the offer made by Tifft and associates. Its findings in this regard were clearly erroneous. Funk testified that his assets at this time consisted of a small house that he rented to others which was worth $7500, a larger house worth $30–$35,000 (mortgaged for about $20,000), a ranch worth $35–$40,000 (mortgaged for about $20,000), and miscellaneous equipment, etc. worth $5000. He testified that he was willing to sell these properties in order to move to Idaho, and the fact that he had done so by the time of the trial is evidence of his sincerity. His estimated values were shown to be accurate since he sold the small house for $7500 and his two other properties for a deed of trust in his favor of $26,000. Although Funk's financial records were available to defendants, they impeached his testimony only to the extent of showing that he owed *unspecified* sums to various individuals or companies.

Funk also testified he was employed at a rate of $1000 a month and that he received in addition $500 in expense money from his employer which he could use as he wished. Although this expense money was not reflected in Funk's W-2 forms, the defendants did not attempt to show that Funk did not receive the extra $500 per month. Since they had his financial records, this omission is significant.

The fact that Funk's income tax returns show a low net taxable income is largely indicative of the fact that Funk engaged in raising cattle and maintaining rental property which permitted him to minimize his taxes.

4. Pendor-Idaho, in its petition for rehearing, claims that we erred in imputing the knowledge of a promoter of a corporation to the corporation. This argument misinterprets our decision. Kahn, not Tifft, was the promoter of the corporation. However, as President of Pendor-Idaho and one of its three stockholders at the time at which the corporation acquired the land, Tifft was an agent of the corporation and the knowledge of an agent is attributable to the principal regardless of when it is acquired. See Restatement (Second) of Agency §§ 274, 276 (1958); 3 Fletcher Cyc. Corp. (Perm.Ed.) § 799.

Pendor-Idaho also suggests that Tifft's knowledge cannot be imputed to the corporation because Tifft was acting adversely to the interests of the corporation. That exception to the general rule is applicable only in cases where an agent is stealing from the corporation or otherwise defrauding it. Such is not the case here. See Restatement (Second) of Agency § 282, comment c & illustration 4 at 613 (1958).

obligation which Pendor-Idaho Corporation still owes to the seller.

■ The court will also have to take into consideration any capital improvements made to the property by Pendor-Idaho. See generally Ryan v. Plath, 18 Wash.2d 839, 140 P.2d 968 (1943). When it fashions its final order, the court should give the parties and the seller opportunity to be heard should that be necessary.[5]

Reversed and remanded.

EUGENE A. WRIGHT, Circuit Judge (dissenting):

I must dissent. The decision of my brothers is supported neither by the weight of precedent nor the unequivocal findings of the district court. Even if the courts of Idaho were to ignore the weight of authority in other states and hold that Mr. Tifft owed a fiduciary obligation to the Funks, the plaintiffs have failed to sustain their burden of showing they were injured by the alleged breach.

The district court found that an Idaho real estate broker did not owe a duty to a prospective buyer for his client's property requiring him to inform the buyer that he was bidding on the property himself. The rule of this circuit is that

> In diversity cases, where state law controls, a district judge's interpretation of the law of the state where he sits will not be overturned unless clearly wrong, particularly if the highest state court has not passed on the matter.

Douglas v. Beneficial Finance Co. of Anchorage, 469 F.2d 453, 455 (9th Cir. 1972).

There is no Idaho case in point. However, the courts in other states which have considered similar facts have concluded that a broker for the seller can, with the seller's knowledge, outbid prospective buyers, Ries v. Rome, 337 Mass. 376, 149 N.E.2d 366, 371 (1958); Klotz v.

Fauber, 213 Va. 1, 189 S.E.2d 45 (1972); DiBurro v. Bonasia, 321 Mass. 12, 71 N.E.2d 401 (1947); cf. Fish v. Teninga, 330 Ill. 160, 161 N.E. 515 (1928); Jacoby v. Shell Oil Co., 196 F.2d 855 (7th Cir. 1952); Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 423 (1927).

In Ries, supra, plaintiffs sued to impose a constructive trust on property purchased by an associate of the seller's agent. They argued that the broker had a fiduciary duty not to compete with them for the property. The court held that the plaintiffs dealt with the broker "with whom they were, or should have been, dealing at arm's length . . . and who was under no fiduciary duty not to compete with them." 149 N.E.2d at 371.

In Klotz, the Virginia Supreme Court held that the agent of a seller of land did not breach a fiduciary duty to a buyer where it was not alleged that he purchased the property at a price equal to or lower than that offered by the prospective buyer. In that case the broker had not even transmitted the offer to his principal. 189 S.E.2d 45.

In DiBurro, supra, the Supreme Judicial Court of Massachusetts held that there was no breach of fiduciary duty on the part of a broker for a seller of land who purchased the property himself. Plaintiff, a prospective buyer, had made an offer on one parcel and asked the broker to determine if the property was worth that amount. The broker learned that the seller was willing to sell an adjoining parcel as well. The broker eventually purchased the combined properties without informing the plaintiff or other bidders. Absent an agency relationship with the buyer, the court held that no constructive trust could be imposed.

In Teninga, the plaintiff approached a broker who was already interested in purchasing some land for his own account. The court held that the broker

5. Pendor-Idaho contends it is unjust to hold it accountable for Tifft's actions, implicitly suggesting that it would be fairer for us to give to the Funks only Tifft's 24.5% interest in the property. While perhaps "fairer" to Pendor-Idaho, such a result would not make the Funks whole.

did not have to disclose that he was bidding on the property himself. Although the court held that the broker might be liable if he had misrepresented material facts to the prospective buyer, 161 N.E. at 518–519, absent an employment relationship the broker was not required to make a disclosure of his bidding to the plaintiff: "It is required that there be proof of the existence of an employment to constitute a broker an agent in any case." 161 N.E. at 518.

In *Phipps,* the leading case relied on by the majority, the court dealt with a broker who was employed by the prospective buyer to arrange for the purchase of land. The court distinguished those facts from the case where the broker is employed by the seller or acting for himself:

> If Phipps and Quinn had been dealing at arm's length, he (Quinn) might not have been bound by his agreement to purchase for Phipps, but having undertaken to act for Phipps, he becomes an agent  .   .  ..

113 So. 419 at 423.

The cases cited by the majority can be distinguished. They dealt with situations in which the broker was in an agency relationship with the prospective buyer, made affirmative misrepresentations, or bid under the price offered by the plaintiff.

In *Phipps, Mitchell,* and *Golden,* the brokers were the employees of the plaintiff buyers. As such, they had a fiduciary duty not to compete with their principals. Here, however, the Tifft employees were agents of and employed by the owners of the land, and dealt at arm's length with the several prospective buyers.

Similarly, in all the cases cited by the majority, the broker committed acts which traditionally had been held to breach an agent's fiduciary duty: fraudulent misrepresentation, *Phipps,* 113 So. at 421–422, *Taggart,* 336 P.2d at 537; misuse of confidential information, *Golden,* 276 N.W. at 858; failure to disclose conflicting agency, *Allison,* 213 P.2d at

233. Here there was no allegation of fraudulent misrepresentations, no confidential information, and a disclosure of Tifft's employment as broker for the vendor.

In discussing the *Phipps* and *Taggart* decisions, the Supreme Court of Virginia summarized their teachings:

> Under the rule of those cases, a real estate agent is liable to a prospective buyer when the agent fails to transmit the buyer's offer and buys the property for his own account at a price equal to or less than the price the prospective buyer agreed to pay.

*Fauber,* 189 S.E.2d at 45.

Here, the broker did transmit the Funks' offer to the owner. The terms he offered the owner were substantially better than those presented by any prospective buyer. The owner chose to accept those terms rather than wait for another round of offers. I cannot see how the broker can be held liable in such circumstances. Where the broker is not the agent of the prospective buyer, where he acts with the knowledge of his principal, the seller, where there is no misuse of confidential information, where there is no fraudulent misrepresentation, and where the broker bids more than any of the prospective buyers, there should be no liability on the part of the broker if the seller chooses to accept his offer without asking for another round of bids.

The premise of the majority opinion is that the broker somehow prevented the plaintiffs from making a higher bid once he had made his own. This was not an auction sale in which bidding had to be kept open until the highest price was found.

The Carlocks set a price and terms. Tifft and his associates met them. The decision to accept that offer was that of the seller. There was no finding of the court whether the Carlocks would have waited for another round of bids. Their decision to accept the Tifft bid implies that they would not. Moreover, it is far from clear that the Funks could have

made a more attractive bid, even had they known of the one made by Tifft.

The majority dismisses the finding of the district court that the Funks could not have bettered the Tifft bid * on the ground that it is "speculation." On the basis of this speculation, however, they are willing to mandate a constructive trust and turn the property over to the plaintiffs. This ignores the requirement that a plaintiff must demonstrate "damage or injury" to obtain equitable relief, Nab v. Hills, 92 Idaho 877, 452 P.2d 981, 987 (1969).

Even if the majority were to hold that the finding of the district court was clearly erroneous—as they must in order to ignore it—the property surely cannot be turned over to the plaintiffs on the basis of a purely speculative showing that they might have been able to raise the necessary money and assure the Carlocks of their financial stability. At worst, the case should be remanded to the district court for additional findings of fact. At best, it should be dismissed.

Here the trial judge had an opportunity to hear the testimony of the Funks as to their financial status at the time of the sale. He had their financial statements and copies of their income tax returns for the relevant period. These reflected relatively substantial debts. He had before him the Funks' offer, including terms of only $1,000 down and $100 per month for the first 15 months, without interest. (Tifft offered $6,000 down, $300 per month at 6.5% interest.) The trial judge observed the testimony of the real estate agent that the Funks said their offer was the best they could make. On the basis of this evidence and the judge's observation of the witnesses' demeanor, I cannot say that his findings were clearly erroneous.

---

\* The court found, RT 391–392:

I believe the statement made by Mr. and Mrs. Funk to the effect that they could have or would have met or exceeded an offer made by the defendant, or some of them in the action, cannot be accepted. I think that it comes four years later. It is self-serving in the extreme and I think that it is unreliable in that respect.

The evidence with respect to their financial circumstances, I think, also renders it quite doubtful that Mr. and Mrs. Funk either could or would have had the financial ability to equal or exceed the offer had it been communicated. Additionally, there was some impeachment and contradiction as to their financial ability.