**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ronald Bruce DIXON,
Defendant-Appellant.**

**No. 76–2446.**

United States Court of Appeals,
Ninth Circuit.

July 13, 1977.

Rehearing and Rehearing En Banc
Denied Nov. 8, 1977.

Robert W. Ripley, San Diego, Cal., argued for defendant-appellant.

Harry D. Steward, U. S. Atty., Jeff Arbetman, Asst. U. S. Atty. (on the brief), San Diego, Cal., argued for plaintiff-appellee.

Before GOODWIN and WALLACE, Circuit Judges, and INGRAM,* District Judge.

WALLACE, Circuit Judge:

Dixon was convicted after a jury trial of aiding and abetting the possession of 454 grams of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and of conspiracy, in violation of 21 U.S.C. § 846. On appeal, he contends (1) that the evidence was insufficient to sustain his conviction; (2) that a hearsay statement was improperly admitted; and (3) that the prosecutor made improper and prejudicial remarks in his closing argument. We affirm.

I.

The government called two witnesses, Gregory Miller, an undercover police agent, and Edward Becker, the police officer who arrested Dixon. Miller testified that between 6:00 and 7:00 p. m. on March 5, 1976, an informer introduced him to Michael Lloyd Johnson at Johnson's residence. Previous to this meeting, the informer and another undercover police agent, Starks, had negotiated with Johnson for the purchase of one pound of cocaine for approximately $19,600. Miller was to consummate the deal. Johnson asked Miller to show him the money. Miller responded that he had the money but that it was a short distance from the residence. Miller, Johnson and the informer then went to a nearby service station where they met Robert Scanlon, another undercover police agent. Miller retrieved the money from the trunk of Scanlon's car and showed it to Johnson. Johnson asked if Miller "would front the money to him for the purchase of the cocaine," but Miller refused. Johnson replied that "he would have to make a telephone call to his connection and try to have the cocaine fronted to him rather than [Miller] front the money to him for the cocaine."

After placing the call from a nearby public telephone, Johnson stated that delivery would be made at his residence in one hour. Miller responded that he would call at 9:00 p. m. to verify that the cocaine had in fact been delivered.

When Miller called, the informer answered and stated that complications had arisen. He requested that Miller pick him up. Miller did so and the two then drove a short distance to a meeting with other agents involved in the case. At 9:25, Miller and the informer returned to the Johnson residence and parked in front. A man later identified as Steven Gallagher entered Miller's car. The informer left and Gallagher and Miller discussed the cocaine transaction. Gallagher told Miller that the money would have to be given to him before the cocaine could be delivered. Miller refused and stated he would not hand over the money until he saw the cocaine he was to purchase. The two then worked out a rather elaborate plan to effectuate the sale.

Miller followed Gallagher to Scanlon's location, then the three, each in a separate vehicle, drove to a location on Forward Street which was dark, quiet and in a residential neighborhood. Miller took the money from Scanlon and directed him to leave. Gallagher then left and was gone for approximately 10 to 20 minutes. When he returned he had a passenger with him, Dixon. Gallagher parked his pick-up approximately 100 feet behind Miller's car. Leaving Dixon in the pick-up, Gallagher entered Miller's car. In Miller's words, after Gallagher

> sat down he asked me if I had the money. I told him that I had the money, it was in the trunk. I wasn't going to show or give the money till I'd seen the cocaine. Mr. Gallagher told me that he couldn't get the cocaine fronted to him, so he had to bring along the man.

After Gallagher produced the package of cocaine and assured Miller that it was genuine, Miller gave the arrest signal.

---

* Honorable William A. Ingram, United States District Judge, Northern District of California, sitting by designation.

At the time of the signal, Officer Becker was waiting as a passenger in an unmarked van around the corner from the scene of the sale on Forward Street. When directed over the police radio to move in, the van's driver drove on to Forward Street to a point behind Gallagher's pick-up. By the time Becker was approaching the pick-up, several officers and police vehicles had already reached Miller's car and were placing Gallagher under arrest. At least one of those officers had drawn his gun. Distinctive markings on the officers' apparel indicated that they were police. As he approached the pick-up, Becker saw Dixon attempting to crouch down in the truck cab. As the van came closer, Dixon slowly opened the passenger door several inches and then, when the van reached the pick-up, he bolted from the truck and ran across the front lawn of the nearest residence. Becker pursued and after a chase of 50 feet closed the gap. With gun drawn, Becker ordered Dixon to stop. Dixon complied.

## II.

Before Miller testified, Dixon's counsel, aware of Gallagher's statement to Miller regarding the need to bring "the man," moved to keep Miller from repeating the statement until the government succeeded in establishing a conspiracy and tying Dixon to it. The district judge stated that he would permit the statement under the rule governing statements of coconspirators, Rule 801(d)(2)(E), Fed.R.Evid., subject to being stricken if the government did not eventually succeed in tying Dixon to an established conspiracy with independent evidence. When Miller began to testify regarding the statement, Dixon objected but was overruled. The statement was never stricken and, without question, played a crucial role in the prosecution.

■ Under the Federal Rules of Evidence, certain statements of coconspirators are not hearsay. Rule 801(d)(2)(E) provides that a "statement is not hearsay if . . [t]he statement is offered against a party and is . . . a statement by a cocon-spirator of a party during the course and in furtherance of the conspiracy." In the present case, the relevant prerequisites to admission of Gallagher's statement are embodied in the word "coconspirator": The government must show by evidence independent of the statement (1) that a conspiracy existed and (2) that Dixon was a member of it.

Regarding the *quantum* of evidence required, it is now well settled in this circuit that "substantial independent evidence, other than hearsay . . . enough to make a *prima facie* case" is sufficient. *United States v. Calaway,* 524 F.2d 609, 612 (9th Cir. 1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 733 (1976). This evidence "need not compel a finding beyond a reasonable doubt." *Id.* Further, the requisite substantial evidence need not be unchallenged. As in analogous cases involving appellate review of the facts, we should view the evidence and make inferences in a light most favorable to the prevailing party. *See id.* at 613; *see also United States v. Costey,* 554 F.2d 909, 910 (9th Cir. 1977, amended April 20, 1977); *United States v. Hood,* 493 F.2d 677, 680 (9th Cir.), *cert. denied,* 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 84 (1974). Also, the substantiality of the independent evidence establishing the second element—the defendant's complicity in the conspiracy—need only be slight if the first element—the existence of the conspiracy—is already clearly established. *See United States v. Calaway, supra,* 524 F.2d at 612–13. This conclusion follows inevitably from the well-settled rule that only slight evidence showing the defendant's complicity in a clearly established conspiracy is sufficient to sustain his or her conviction for conspiracy. *E. g., United States v. Costey, supra,* 554 F.2d at 910; *United States v. Perry,* 550 F.2d 524, 529 (9th Cir. 1977); *United States v. Wood,* 550 F.2d 435, 441 (9th Cir. 1976); *United States v. Calaway, supra,* 524 F.2d at 612–13. It would be anomalous to require a greater quantum of evidence to admit the statements of coconspirators than is required to sustain the defendant's conviction.

■ Clearly, the evidence was abundant as to the existence of the conspiracy. The only serious question is whether there was the requisite slight evidence to connect Dixon to it.

We believe that the independent evidence presented connecting Dixon to the conspiracy was sufficient to permit the introduction of Gallagher's statement. The most reasonable inference to draw from Gallagher's departure from Forward Street, his absence for 10 to 20 minutes and his return with Dixon and the cocaine—especially when all this is viewed in the context of the prior negotiations with the undercover police agents and the informer—is that Gallagher, during his absence, secured the cocaine and that Dixon was in some way knowingly connected with that act. This view is reinforced by the implausibility of the inference that Gallagher, after taking elaborate precautions, brought an innocent and unwitting bystander to the very scene of the drug transfer.

Moreover, this reasonable inference of Dixon's membership in the conspiracy is only a part of the prosecution's independent evidence. When the police arrived to arrest Gallagher and were visible to Dixon, he first attempted to hide by crouching down. Then, as the police drew nearer to his hiding place, he bolted and attempted to flee. Consciousness of guilt, and therefore guilt itself, can be inferred from this conduct. *Rossetti v. United States,* 315 F.2d 86, 87 (9th Cir.), *cert. denied,* 375 U.S. 814, 84 S.Ct. 45, 11 L.Ed.2d 49 (1963).

In determining whether the requisite slight evidence was presented, all of the

circumstances must be considered "collectively, not in isolation." *United States v. Calaway, supra,* 524 F.2d at 612. When we analyze the whole web of circumstances which has been spun in this case, including Gallagher's brief absence to secure the cocaine from his source, Dixon's attempt to hide from the police, and his attempted escape, we hold that there were reasonable inferences in favor of the prevailing party of sufficient substantiality to permit the introduction of Gallagher's statement. There was no error in the district judge's ruling.

### III.

When Gallagher's statement to Miller about the need "to bring along the man" is added to the independent evidence and the inferences therefrom discussed in part II, *supra,* the evidence becomes more than sufficient to sustain the jury's verdict on both the conspiracy, *see United States v. Perry, supra,* 550 F.2d at 529; *United States v. Wood, supra,* 550 F.2d at 441, and the aiding and abetting counts.

### IV.

■ In his closing arguments, the prosecutor repeatedly argued that no cocaine appeared during the course of the negotiations until Dixon arrived on the scene.[1] At the time the prosecutor made these arguments, Dixon's counsel interposed no objection. After the court instructed the jury and the jury retired to deliberate, however, Dixon's attorney brought to the court's attention the fact that one of the police reports stated that at 12:05 p. m. on March 5, 1976, Gallagher stepped out of a closet in Johnson's residence and showed

---

1. For example, he asserted that

    there was no cocaine until Mr. Dixon arrived on the scene.

    .    .    .    .    .

    And what about the actions of Mr. Gallagher? There's no doubt about his intentions in this case. But did he ever once—as a matter of fact, did Mr. Johnson ever once produce any cocaine until Mr. Dixon came on the scene? And the answer to that, ladies and gentlemen, is no. They couldn't. They

    couldn't produce it. They were the agents for the real supplier, the man  .   .   ..

    But in addition to that, Mr. Gallagher, of course, never produced the cocaine until Mr. Dixon arrived.

    .    .    .    .    .

    Mr. Gallagher wanted the agent to front the money and he refused and Gallagher could not produce the cocaine until Mr. Dixon arrived on the scene there late at night  .  .  .

one ounce of cocaine to the informer. On the ground that the prosecutor was aware of this occurrence when he argued that no cocaine appeared until Dixon came on the scene late that night, Dixon moved for a mistrial. The prosecutor conceded that the 12:05 p. m. incident was in the report but argued that he "didn't realize it at the time" of his closing argument. The district judge denied the mistrial motion, stating that

> I don't think it makes any difference. The jury is going to decide that Mr. Dixon was there for an evil purpose or Mr. Dixon was an innocent bystander. The fact that there was an ounce of cocaine shown earlier in the day—an ounce is a long way from a pound. The pound is the thing they are going to consider.

The prosecutor's argument clearly constituted error. The question remains, however, whether the likelihood of prejudice caused by the error is sufficiently great to require reversal. Because Dixon delayed in objecting to the error until after the jury had retired, it can be argued that the plain error rule should apply. Rule 52(b), Fed.R. Crim.P. Under that rule we would reverse only if it were *highly probable* that the error materially affected the jury's verdict. *United States v. Segna,* —— F.2d ——, —— (9th Cir. April 6, 1977) (slip op. at 643). Nevertheless, the district judge did not deny Dixon's motion for a mistrial because it was not timely. Rather, he considered the motion on its merits. In these circumstances, we will apply the harmless error rule of Rule 52(a), Fed.R.Crim.P., and affirm only if it is more *probable* than not that the error did not materially affect the verdict. *United States v. Valle-Valdez,* 554 F.2d 911, 914–916 (9th Cir. 1977).

We conclude that the district judge did not improperly deny the motion for mistrial. Although the inference the prosecutor argued to the jury—only Dixon had possession of *any* cocaine before the transfer on Forward Street—was false in light of the 12:05 p. m. incident involving Gallagher and the informer, nothing precluded the inference that only Dixon had pretransfer possession of the one pound of cocaine. As the district judge noted, the jury's deliberations were going to revolve around the source of the one pound actually transferred. Also, even without the prosecutor's error, the inference he urged upon the jury would still have been available to it because the inference was not precluded by any facts in evidence.

Perhaps in recognition of this last point, Dixon's mistrial motion and his argument on appeal are based primarily on prosecutorial misconduct. Yet as we have stated before, our concern is with the prejudicial *effect* of the prosecutor's error on the defendant and not, except in exceptional cases, with the intentional or inadvertent nature of the error itself. *United States v. Segna, supra,* —— F.2d at —— n. 4 (slip op. at 643 n. 4); *cf. United States v. Ott,* 489 F.2d 872 (7th Cir. 1973). In the absence of a showing of the requisite prejudice in this case, we are opposed to reversing Dixon's conviction merely to punish the prosecutor's blunder—especially when it is clear that the district judge accepted the prosecutor's assertion that the error was not intentional.[2]

In sum, we hold that in light of all the circumstances it is probable that the error in the prosecutor's closing argument did not materially affect the jury's deliberations and verdict. Accordingly, we affirm Dixon's conviction.

AFFIRMED.

GOODWIN, Circuit Judge, dissenting:

I do not think the hearsay statement was properly admitted under the coconspirator exception. Fed.R.Evid. 801(d)(2)(E). In this case I fear that the overwhelming evidence of the conspiracy has overflowed to enhance the extremely thin evidence linking Dixon to it. His presence in the car

---

2. After denying the motion for a mistrial, the district judge stated, "[B]ut I would think [the Prosecutor], that—read your reports a little more carefully the next time."

could have an infinite number of innocent explanations; and his attempt to separate himself from an encounter with the police under the circumstances noted is hardly surprising.

Until now, the "slight evidence" required to link a defendant to an already proven conspiracy has been substantially more than this. As the majority notes, the evidence of the defendant's connection, independent of the hearsay statement, must support a prima facie case; *i. e.,* it must be sufficient to go to the jury. This circuit has recently held more extensive evidence of involvement to be insufficient when measured against the slight-evidence standard. *United States v. Peterson,* 549 F.2d 654, 657–8 (9th Cir. 1977).

Of course, there are suspicious circumstances. If defendants could be forced to answer questions, one could think of several for Dixon. But, viewing the government's evidence against him apart from the evidence against the conspiracy, I do not see enough to make the hearsay admissible as to Dixon. I would reverse.