**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Frank Patrick ROSALES, Defendant-Appellee.**

No. 77–3282.

United States Court of Appeals, Ninth Circuit.

Aug. 23, 1978.

As Amended on Denial of Rehearing and Rehearing En Banc Oct. 23, 1978.

Mark L. Webb (argued), San Francisco, Cal., for plaintiff-appellant.

Emerson E. Stafford, H. Jesse Arnelle, San Francisco, Cal., for defendant-appellee.

Hug, Circuit Judge, dissented and filed opinion.

Before GOODWIN, WALLACE, and HUG, Circuit Judges.

WALLACE, Circuit Judge:

The United States appeals from a ruling made sua sponte by the district court suppressing evidence sought to be introduced against Rosales at his trial for controlled substance violations. At issue is the admissibility of the testimony of a government agent as to statements of an alleged coconspirator naming Rosales as his source of drugs. We reverse.

## I

Rosales was indicted along with two others for violating 21 U.S.C. §§ 841(a)(1) and 846 by distributing and conspiring to distribute cocaine. Pursuant to plea negotiations, his codefendants pleaded guilty to different charges, and the indictment was dismissed as to them. In a pretrial conference, the district judge, on his own motion, raised questions about the conspiracy count against Rosales. He expressed doubts that there was sufficient evidence of the existence of a conspiracy to admit the testimony of an undercover agent as to the declarations of DelPrete, an alleged coconspirator and one of Rosales' original codefendants. The agent's testimony would be that Del-Prete identified Rosales as his source of cocaine. The government made an offer of proof of the evidence, independent of the disputed declarations, that it would introduce to show the existence of a conspiracy. Following oral argument, the judge ruled from the bench that a prima facie case of

conspiracy had not been made out, and that the statements must be suppressed. This appeal, pursuant to 18 U.S.C. § 3731, followed.

II

The traditional rule governing the admissibility of coconspirator declarations is now codified in Federal Rule of Evidence 801(d): "[A] statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not objectionable on hearsay grounds when offered against that party. We have developed certain requirements that must be met before this rule may be invoked. The one relevant to this case is that there must be evidence, independent of the proffered statements, which is sufficient to make out a prima facie case of the existence of the conspiracy.[1] *United States v. Dixon,* 562 F.2d 1138, 1141 (9th Cir. 1977); *United States v. Calaway,* 524 F.2d 609, 612 (9th Cir. 1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 733 (1976). *Accord, United States v. Nixon,* 418 U.S. 683, 701, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). The parties do not dispute this formulation of the rule, but only its application to this case.

Before discussing that application, we must first decide which standard of review of the decision of the district court is appropriate. In that regard we point out that we are asked to review not a finding of fact, but a conclusion of law. The question before the district court was not whether the proof offered by the government should be believed, but whether a prima facie case had been made out, *i. e.,* "whether the evidence, considered most favorably to the government, was such as to permit a rational conclusion by the jury," *United States v. Nelson,* 419 F.2d 1237, 1242 (9th Cir. 1969), that a criminal conspiracy existed beyond a reasonable doubt. This is a question of law. Consequently, we are not confined to the "clearly erroneous" or some other restricted standard of review, but it is our duty to exercise our independent judgment to decide whether the facts the government offered to prove were sufficient to create a jury question on the existence of a conspiracy. *See Felder v. United States,* 543 F.2d 657, 663 (9th Cir. 1976); *United States v. One Twin Engine Beech Airplane,* 533 F.2d 1106, 1108 (9th Cir. 1976); *Funk v. Tifft,* 515 F.2d 23, 25 (9th Cir. 1975); 5A Moore's Fed. Practice ¶ 52.03[2], at 2662 (1977); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2588, at 750 (1971).

III

The government represented to the district court that Agent Bender of the Drug Enforcement Administration and other officers would testify to the following facts:

On March 18, 1977, Bender, acting undercover as a narcotics dealer, went into a San Francisco bar called Sneaky Pete's and discussed with Gino DelPrete, the bar's owner and manager, the purchase of two ounces of cocaine for $3,000. At around 6:30 p.m., Bender was still in Sneaky Pete's awaiting delivery of the cocaine when he asked DelPrete to call his connection or source to find out when the cocaine would be delivered. DelPrete then put the telephone on the bar and placed next to it a white napkin bearing the name "Frank" [Rosales' first name] and what appeared to be a seven-digit telephone number. Bender watched DelPrete make a telephone call and then continued to wait for the cocaine. About an hour and ten minutes later at 7:40 p.m., DelPrete suddenly left Sneaky Pete's and was seen by Bender to enter a 1968 Mercury Cougar registered to Ro-

---

1. Other requirements are that there must be at least slight evidence, independent of the statements, of the defendant's connection to the conspiracy, *United States v. Dixon, supra,* 562 F.2d at 1141; *United States v. Testa,* 548 F.2d 847, 853 (9th Cir. 1977), and, as Rule 801 explicitly states, that the statements be shown to have been made "during the course and in furtherance of the conspiracy." *See United States v. Testa, supra,* 548 F.2d at 851–52; *Carbo v. United States,* 314 F.2d 718, 735 n.21 (9th Cir. 1963). As will be seen, and as Rosales does not dispute, the proof offered by the government clearly satisfied these additional requirements.

sales. Surveillance agents observed that Rosales was driving the car. Rosales drove around the block for about five minutes after which DelPrete exited, entered Sneaky Pete's, and requested that Bender, who had remained inside, accompany him to the bathroom of the bar. Inside the bathroom DelPrete gave Bender two ounces of cocaine.

On March 24, 1977, the second distribution date charged, Bender again went to Sneaky Pete's to purchase cocaine from DelPrete. Bender said he had only an hour and a half to catch a plane but that he would buy three ounces of cocaine if it could be delivered within that time. Bender's purpose in prescribing this short time period was to "surface" DelPrete's source of cocaine. Bender noticed that Rosales was in the bar when Bender entered and saw DelPrete converse with Rosales in hushed tones after Bender had placed his cocaine order. A few minutes later Bender looked over and saw that Rosales had left. This was at approximately 4:25 p.m. Surveillance agents observed Rosales enter his 1968 Mercury Cougar and drive to another location in San Francisco. He was temporarily lost from sight, but was seen at about 4:50 p.m. reentering Sneaky Pete's on foot. Bender then saw Rosales go directly to DelPrete and talk to him a moment, after which both DelPrete and Rosales went to the kitchen area of the bar. After a minute or two, DelPrete and Rosales left the kitchen area, Rosales resumed his seat at the bar, and DelPrete summoned Bender into the kitchen. Bender went into the kitchen where he was given about three ounces of cocaine by DelPrete. After receiving the cocaine, Bender went back to his seat at the bar, bought a round of drinks for DelPrete, Rosales, and himself, and then left.

Excluded from this recitation of facts, of course, is Bender's expected testimony which would show that DelPrete indicated to him that Rosales was his source of supply.

"A conspiracy is defined as a combination of two or more persons to accomplish some unlawful purpose, or some lawful purpose by unlawful means." *United States v. Heck,* 499 F.2d 778, 787 (9th Cir.), *cert. denied,* 419 U.S. 1088, 95 S.Ct. 677, 42 L.Ed.2d 680 (1974). *Accord, Iannelli v. United States,* 420 U.S. 770, 777, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). Although the individual acts of two persons, viewed in isolation, might appear perfectly innocent, " '[a]n otherwise innocent act of "relatively slight moment," may, when viewed in the context of surrounding circumstances, justify an inference of complicity . . .' " *United States v. Calaway, supra,* 524 F.2d at 612, *quoting United States v. Ragland,* 375 F.2d 471, 478 (2d Cir. 1967), *cert. denied,* 390 U.S. 925, 88 S.Ct. 860, 19 L.Ed.2d 987 (1968).

Judged by these standards, we think it manifest that a jury could rationally conclude beyond a reasonable doubt that a conspiracy existed—namely that DelPrete and Rosales had an agreement to sell cocaine. This is not to say, of course, that a conviction would be compelled by this evidence,[2] but the combination and timing of events here is too suggestive of guilt for a judge to take the question from the jury, or to conclude that the proper foundation had not been laid to allow statements of coconspirators into evidence.

Rosales invites us to compare this case with others from our circuit and elsewhere in which conspiracy convictions have been reversed for insufficient evidence or coconspirator declarations have been held to be inadmissible hearsay.[3] He argues that the facts in these cases were as strong or

**2.** The evidence, of course, need not be such as to compel a conviction, but only to support it. *United States v. Calaway, supra,* 524 F.2d at 612.

**3.** To the extent such decisions turn on the existence of a conspiracy, of course, the issue before the court is the same in reversals for insufficient evidence as in exclusions of coconspirator statements for inadequate foundation —namely, whether a prima facie case has been made out.

stronger in support of the prosecution than is so here. Factual comparisons of this sort have inherent limitations, however. Most conspiracy cases rely heavily upon a pattern of circumstantial evidence, and the existence and strength of an inference from such evidence that a person agreed with others to commit unlawful acts necessarily depend upon the totality and interrelationship of many individual facts. Very seldom do we find a set of facts in one conspiracy case to be so nearly identical to those in another that a finding in one that a prima facie case has or has not been made out compels the same conclusion in the other. Rather, in each case we must ask anew the basic question whether, from this unique set of circumstances and considering the evidence most favorable to the government, a jury would be entitled to convict.

Nevertheless, we have examined the cases to which Rosales refers and we find each of them distinguishable. In two of these cases, *United States v. Johnson,* 513 F.2d 819 (2d Cir. 1975); *United States v. Cirillo,* 499 F.2d 872 (2d Cir.), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974), it was clear from the record that the supplying, buying, and selling of contraband were accomplished entirely by persons other than the accused, thus making it arguably more likely that the defendant was merely a spectator—knowing or unknowing—and not a participant in the criminal activity. Similarly, in *United States v. Ong Way Jong,* 245 F.2d 392 (9th Cir. 1957), proof that Ong had *not* been the supplier for a previous drug sale tended to prove that he might not have played that role in the transaction for which he was on trial. Here, by contrast, one could infer from the facts that DelPrete had no cocaine prior to either of Bender's two purchases, and that Rosales necessarily supplied the drugs for both those transactions.

In *United States v. Spanos,* 462 F.2d 1012 (9th Cir. 1972), the indictment alleged a specific distribution arrangement between Spanos, Godwin (the middleman who purchased amphetamines from Spanos), and the buyers to whom they were ultimately distributed. There was no question about the existence of a conspiracy between Godwin and his customers, or about the fact that on at least one occasion Spanos sold to Godwin. "[B]ut there [was] no evidence that Spanos had agreed with Godwin that Godwin was to resell to Herring [an undercover agent] or to anyone else." *Id.* at 1015. Thus, there was a lack of evidence of the particular conspiracy charged in the indictment. In this case, however, there was evidence from which the conspiracy charged could be inferred; if Rosales did supply cocaine to DelPrete—and we believe the evidence permits that inference—it appears that it was for the precise purpose of filling Bender's orders.

For similar reasons, *United States v. Basurto,* 497 F.2d 781 (9th Cir. 1974), does not help Rosales. The conspiracy conviction of defendant Travers was reversed in that case because there was insufficient evidence that he participated in the conspiracy rather than simply knew of it. *Id.* at 792–93. But a permissible inference here is that Rosales actually supplied cocaine with the intent that Bender receive it, which, by definition, includes the inference that Rosales actively participated in the conspiracy.[4]

---

4. Two other cases cited by Rosales merit brief mention. In *Jensen v. United States,* 403 F.2d 1018 (9th Cir. 1968), we reversed the defendant's conviction for concealing and selling heroin, but in that case conspiracy was apparently not charged. In any event, the court there applied a standard of review—that the evidence must exclude every hypothesis but that of guilt—that was discredited the following year in *United States v. Nelson,* 419 F.2d 1237, 1243 (9th Cir. 1969).

The district judge in the case before us relied heavily upon *United States v. Stroupe,* 538 F.2d 1063 (2d Cir. 1976), where a divided panel of the Second Circuit reversed a conspiracy conviction. The defendant was visited briefly in his trailer by one who had agreed to procure amphetamine for undercover agents. Immediately after the visit, which was out of sight of the agents, the middleman produced the drugs. Although we believe the case can be distinguished on its facts, its more serious flaw, as the dissent points out, is that it engages in the kind of review disapproved by *Nelson, i. e.* the insistence that all inferences of innocence be

We need not pursue the further distinctions that could be drawn between these cases and the one before us. It is clear to us that it is a jury question whether a conspiracy existed in this case. The district judge was incorrect in concluding otherwise. Thus, the evidence of the alleged statements made by the alleged coconspirator should not have been suppressed.[5]

REVERSED AND REMANDED.

HUG, Circuit Judge, dissenting:

I dissent. The question before the court is one of the admissibility of a statement of a co-conspirator under Federal Rule of Evidence 801(d). The trial court suppressed the statement on the ground that there was not sufficient evidence independent of the statement to make out a prima facie case of the existence of a conspiracy. This was a preliminary evidentiary ruling. As the majority views the case, we are asked to review a conclusion of law and not a finding of fact; thus we are not confined to the clearly erroneous standard of review.

The analysis of the majority is that the offer of proof presented facts which must be taken as true and, therefore, the question before the court was one of applying these facts to a legal standard, to determine whether the undisputed facts were sufficient to constitute a prima facie case. The majority contends that this is the same decision that the trial court must make when it rules on a motion for acquittal and

is thus a question of law. This argument might be persuasive if we were writing upon a clean slate. However, we are not; and, in my opinion, the law of this circuit is clearly to the contrary. We must remember that this is a preliminary evidentiary ruling on a motion to suppress, although it is akin to the type of decision that would be made on a motion to acquit. The law of the ninth circuit has plainly established that trial court findings concerning admissibility of evidence on a motion to suppress are reviewed as questions of fact under the clearly erroneous standard. *United States v. Wysong,* 528 F.2d 345 (9th Cir. 1976); *United States v. Patterson,* 492 F.2d 995 (9th Cir. 1974); *Costello v. United States,* 324 F.2d 260 (9th Cir. 1963); *United States v. Page,* 302 F.2d 81 (9th Cir. en banc 1962). This is true, whether that determination by the trial court is made on conflicting evidence or agreed facts. *United States v. Hart,* 546 F.2d 798 (9th Cir. en banc 1976). The precise question of whether the trial court's determination is one of fact or law, when the facts are not in dispute, was put clearly in focus in that *en banc* decision by the concurring and dissenting opinions of Judges Duniway and Hufstedler, and the majority held it to be a question of fact governed by the clearly erroneous standard.[1]

Viewing the trial court's decision to suppress the evidence under the clearly erroneous standard, I do not find the decision to

excluded by the evidence. That is not the law of this circuit.

5. Rosales argues on appeal, as he did before the district court, that whether or not Del-Prete's statements are admissible under Federal Rules of Evidence 801, to admit them would violate his Sixth Amendment right "to be confronted with the witnesses against him." The district judge did not reach this issue, nor do we. If Rosales continues to rely upon it, it should be decided in the first instance by the trial court under governing constitutional standards. *See, e. g., Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *United States v. Snow,* 521 F.2d 730 (9th Cir. 1975), *cert. denied,* 423 U.S. 1090, 96 S.Ct. 883, 47 L.Ed.2d 101 (1976); *United States v. Adams,* 446 F.2d 681 (9th Cir.), *cert. denied,* 404 U.S. 943, 92 S.Ct. 294, 30 L.Ed.2d 257 (1971).

1. Perhaps we ask too much of the imprecise and somewhat artificial distinction between a finding of fact and conclusion of law. The relevant inquiry is whether the ruling is the type of determination by a trial court which should be accorded deference on appeal. It would appear that this circuit has determined that findings by a trial court concerning admissibility of evidence on a motion to suppress, whether classed as fact or law, are entitled to such deference under the clearly erroneous standard. In other words, this is not the type of decision where the appellate court should substitute its judgment for that of the trial court unless the trial court's finding is clearly erroneous.

be clearly erroneous and therefore I would affirm.