**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Henry Clay WEST, Defendant-Appellant.**

**No. 81–1419.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 3, 1982.

Decided July 1, 1982.

Rehearing Denied Sept. 29, 1982.

---

Randy Sue Pollock, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Andrea Sheridan Ordin, U. S. Atty., Joyce Babst, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before WRIGHT and FLETCHER, Circuit Judges, and MEREDITH*, District Judge.

* Hon. James H. Meredith, Senior United States District Judge of the Eastern District of Missouri, sitting by designation.

FLETCHER, Circuit Judge:

Henry Clay West appeals his conviction for bank robbery, 18 U.S.C. § 2113(a), (d) (1976). He offers four reasons for reversing his conviction: (1) improper trial testimony by an Assistant United States Attorney; (2) improper argument by the prosecutor to bolster the credibility of a government witness; (3) erroneous jury instructions; and, (4) erroneous denial of mistrial and new trial motions. Our jurisdiction of the appeal rests on 28 U.S.C. § 1291 (1976). Because we find that the Government improperly attempted to bolster the credibility of one of its witnesses, we reverse.[1]

## FACTS

West and a co-defendant, Cathy McClain, were indicted for armed bank robbery. McClain pled guilty and agreed to testify against West. At a jury trial, she identified West as her masked accomplice. West's defense was that a third party, Robert Sisto, accompanied McClain in the robbery and that McClain was protecting Sisto, her boyfriend, by identifying West. The jury deadlocked, resulting in a mistrial.

Upon retrial, the same evidence was produced except West called a new witness, Robert Sisto, the alleged boyfriend and actual bank robber. Sisto testified that he had been with McClain on the day of the robbery but refused to testify further on self-incrimination grounds. The prosecutor then asked Sisto to identify McClain from a photospread.

As the prosecutor showed the witness, Sisto, the photospread she asked, "Did you just see this defendant [West] signal to you with his hand as he looked at the photograph?" Defense counsel objected and stated: "I object. Nothing happened." The trial judge had not been looking in defendant's direction and accordingly asked the Government to withdraw the question.

The Government called an Assistant United States Attorney, who allegedly had seen the signal by defendant, as a rebuttal witness to testify regarding the incident. Defense counsel objected to the witness's testimony but was overruled. The witness then testified that defendant had signalled the number of the correct photograph, five, to the witness. In closing argument, both the Government and defense counsel focused on the testimony by the Assistant United States Attorney. The jury subsequently convicted the defendant.

Essentially, appellant's challenge to his conviction turns on the propriety of allowing a prosecutor to testify as a witness in a criminal trial and the Government's comments in closing argument on the testimony of such a witness.[2]

## DISCUSSION

A. *The Propriety of Testimony by a United States Attorney*

 No Ninth Circuit cases address precisely this issue. Decisions from other circuits, however, establish the following general rules: (1) a United States Attorney who participates in prosecuting a case should not be called as a witness "unless all other sources of possible testimony have been exhausted," *United States v. Torres*, 503 F.2d 1120, 1126 (2d Cir. 1974); (2) although testimony by a United States Attorney should not be encouraged, such persons are not disqualified as witnesses in cases in which they play no other role, *United States v. Armedo-Sarmiento*, 545 F.2d 785, 793 (2d Cir. 1976), *cert. denied*, 430 U.S. 917, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977).

 In the instant case, the United States Attorney called as a witness was seated in the spectator section of the courtroom and had not participated in any way

---

1. Because we reverse appellant's conviction on the basis of improper vouching, we express no opinion on the unrelated allegation of error in the district court's instructions to the jury.

2. Appellant's mistrial and new trial motions were predicated on the prosecutor's allegedly improper statements in closing argument. We need not address the propriety of the district court's denial of these motions because we find reversible error in the prosecutor's closing statement.

in the investigation or trial of appellant. Appellant argues that, nonetheless, the attorney should not have been allowed to testify because another percipient witness was available. The record reveals, however, that neither defense counsel nor the Government identified the alternate percipient witness at the time of the trial. Moreover, the alternate witness was an FBI agent who had been seated at the government counsel's table throughout appellant's trial. Such an alternate witness would present essentially the same risks as the United States Attorney who was allowed to testify. Under these circumstances, where the district judge faced the difficult choice of allowing the United States Attorney to testify or foregoing testimony on the signalling incident altogether, we cannot say that he abused his discretion in allowing the United States Attorney to appear as a rebuttal witness, especially since she had played no other role in the case.

### B. Improper Vouching by the Prosecution

██ In closing argument the Government attorney made certain statements which appellant alleges were an improper attempt to bolster the credibility of the Assistant United States Attorney's testimony regarding the hand signal incident. We must first determine whether these statements constituted error and only then determine whether they provide a basis for reversal.

In *United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980), *cert. denied*, 452 U.S. 942, 101 S.Ct. 3088, 69 L.Ed.2d 957 (1981), we stated that:

> It is improper for the prosecution to vouch for the credibility of a government witness. Vouching may occur in two ways: the prosecution may place the prestige of the government behind the witness or may indicate that information not presented to the jury supports the witness's testimony.

Here, we face an instance of the first type of vouching. In her closing argument, the prosecutor made the following statement:

> If you are willing to believe that an officer of this Court and a member of the U. S. Attorney's Office is going to commit perjury, which is what she would have had to do, to believe that she never saw the Defendant signal the number five to the Witness then I would think that the whole case—that you would have doubt about the whole case, and that you would have to acquit the Defendant if you are willing to believe that; that this conviction is so important to the Government ... that an officer of the U. S. Attorney's Office would take that stand and commit perjury. If you believe this to be a conspiracy against this Defendant, that we have joined Cathy McClain, and that we have all conspired to convict this man, then acquit him. You have no choice.

This statement certainly suggested to the jury that it should believe the testimony of the government witness because of the witness's relationship to the office of the prosecutor and the court.

The Government seeks to justify this effort to bolster the credibility of its witness by arguing that appellant's summation to the jury invited such a response. In *Lawn v. United States*, 355 U.S. 339, 359–60 n. 15, 78 S.Ct. 311, 322–23 n. 15, 2 L.Ed.2d 321 (1957) (cited in *Roberts*, 618 F.2d at 533), the Supreme Court recognized that a defendant's closing argument may invite otherwise improper vouching by the Government.

> Moreover, petitioners' counsel in his summation to the jury had argued that the Government's case was a persecution of petitioners, had been instituted in bad faith at the instance of a group of revenue agents, and was supported "solely" by the testimony of Roth and Lubben who were admitted perjurers, and counsel in his opening statement had said that the United States Attorney and his assistant in charge of the case "had been instructed, or in my opinion they never would have done this." These comments clearly invited the reply which petitioner Lawn now attacks.

**656**

*Id. See also, United States v. Praetorius,* 622 F.2d 1054, 1061 (2d Cir. 1979), *cert. denied, sub. nom. Lebel v. United States,* 449 U.S. 860, 101 S.Ct. 162, 66 L.Ed.2d 76 (1980); *United States v. Bess,* 593 F.2d 749, 757 n. 11 (6th Cir. 1979); *United States v. LaSorsa,* 480 F.2d 522, 526 (2d Cir.), *cert. denied,* 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973). Each of these cases, like *Lawn,* involved a direct attack on the Government and its conduct of the case. Such an attack may indeed invite a response that but for the attack would be improper.

In her closing argument, counsel for appellant made the following statement regarding the testimony of the Assistant United States Attorney.

> Robert Sisto didn't need any help in identifying Cathy. Not only did he know her from his intimate relationship with her, but he saw the picture of Cathy McClain and himself on that board. Yesterday the Prosecutor attempted to discredit Mr. Sisto by calling another prosecutor who was in the Court, who claims that she saw a movement of hand by Mr. West. You observed Mr. West yesterday, you observed Mr. Sisto, and all of the Witnesses who testified. And you, ladies and gentlemen, are the judges of the actions of the Witnesses. You judge their demeanor. If you want to accept the Prosecutor's statement that she saw a hand move, then you can. But you were the individuals who were watching.

**3.** In *United States v. Praetorius,* for example, defendant's counsel had characterized the government's case and conduct as "[i]ncredible," "totally absurd," "lies," "fraud." The government's attorneys and agents were called "conniver[s]," "deceiver[s]," "cheat[s]," and "swindler[s]." 622 F.2d at 1060 n. 2. It is chiefly this sort of vituperation that may invite otherwise improper rebuttal.

**4.** In *United States v. Dixon* we stated that:
The prosecutor's [statement in closing] argument clearly constituted error. The question remains, however, whether the likelihood of prejudice caused by the error is sufficiently great to require reversal. Because Dixon delayed in objecting to the error until after the jury had retired, it can be argued

What testimony or observance was there by the Prosecutor that Robert Sisto was looking at Mr. West? Was there anything like that? You observed them. Did you notice that there was any eye contact between the two of them during the course of that testimony? Or rather, was Mr. Sisto, as every other Witness was, looking at the Attorney who was at this podium asking questions?

This statement is hardly an attack on the personal veracity of the government witness, nor is it an attack on the Government or its role in this case. Rather, the statement asks no more than that the jury scrutinize with care the testimony of the witness. The suggestion that the jury should closely examine crucial testimony is hardly an invitation to otherwise improper rebuttal.[3]

Appellant's counsel simply did not attack the Government in her closing argument. Accordingly, the prosecutor's strong and direct reference to the credibility of the office of the United States Attorney was not invited and improperly sought to place the prestige of the Government behind the testimony of its witness.

■ To determine whether this error by the prosecutor constitutes grounds for reversal of appellant's conviction requires application of the harmless error standard of Fed.R.Civ.P. 52(a). *United States v. Dixon,* 562 F.2d 1138, 1143 (9th Cir. 1977), *cert. denied,* 435 U.S. 927, 98 S.Ct. 1494, 55 L.Ed.2d 521 (1978).[4] *But see United States v. Arteaga-Limones,* 529 F.2d 1183, 1190

that the plain error rule should apply.... Nevertheless, the district judge did not deny Dixon's motion for a mistrial because it was not timely. Rather, he considered the motion on its merits. In these circumstances we will apply the harmless error rule ....
562 F.2d at 1143. The same circumstances present themselves in the instant case: appellant's counsel failed to object to the prosecutor's improper remarks at the time they were made. She did, however, move for a mistrial on the basis of the remarks after the jury had retired to consider the case. The judge considered and denied the mistrial motion on its merits. Thus we are compelled by *Dixon* to apply the harmless error rule.

(5th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976). We may affirm only if it is more probable than not that the error did not materially affect the verdict. *United States v. Valle-Valdez,* 554 F.2d 911, 914–16 (9th Cir. 1977).

Appellant's previous trial resulted in a hung jury. At his second trial, there was testimony from two additional witnesses, Robert Sisto and the Assistant United States Attorney. The jury's principal task was to determine which of the three key witnesses, Sisto, McClain, or West, was telling the truth. The testimony by the Assistant United States Attorney was pivotal in this regard. It directly impugned the credibility of both Sisto and West. When the prosecutor called special attention to this testimony in closing argument and offered improper assurances of its credibility, her statements may well have had a material effect on the verdict. We cannot say that it is more probable than not that the error had no such effect. We must therefore REVERSE appellant's conviction.

REVERSED.

EUGENE A. WRIGHT, Circuit Judge, Specially Concurring:

I agree that we must reverse this conviction. I write separately to explain the special circumstances that require reversal notwithstanding the defendant's failure to offer a timely objection.

Prosecutors must often proceed to trial with cases consisting entirely of testimony from informants, accomplices, or witnesses with prior criminal records. The prosecutor had nothing more here. All essential witnesses in this bank robbery trial were unsavory characters.

The primary prosecution witness, Cathy McClain, admitted robbing the bank and said that West had participated. His theory of defense was that McClain's boyfriend, Robert Sisto, was the masked robber and that McClain was protecting Sisto by implicating West.

In his first trial, a jury was unable to reach a unanimous verdict, and the judge declared a mistrial. That mistrial may indicate that the jury believed neither West nor McClain, or could not agree on which to believe.

Upon retrial, West produced Sisto as a witness. By doing so, he offered the jury a simple but determinative credibility choice. They could believe Sisto and acquit, or they could disbelieve him and convict.

The critical nature of Sisto's credibility did not escape the prosecutor's notice. During cross-examination, she asked Sisto to identify McClain from a photospread. As he examined the photographs, the prosecutor perceived a signal from West to the witness, which she challenged immediately by questioning Sisto about it.

The court refused to permit the question, and the prosecutor brought to the stand an associate in her office who testified that she saw a hand signal. This directly impugned the credibility of both Sisto and West. West testified in rebuttal after the hand signal incident, but failed to deny or to discuss it.

As the case neared submission to the jury, counsels' arguments focused on credibility. They reminded the jury of the key witnesses' character, reputation, and manner of testifying. Defense counsel asked the jury to judge the credibility of the witnesses, including the Assistant U.S. Attorney, based on what they saw and perceived.

The prosecutor responded by telling the jury to believe her witness *because* the witness was an officer of the court and a member of the U.S. Attorney's staff. Moreover, she gave the jury no option to conclude that the witness was mistaken, leaving it to decide either that she accurately described what actually happened or committed perjury.

For the jury to acquit after this summation would have required it to reject the prestige and moral persuasiveness of the government and conclude unanimously that a government attorney purposefully lied. To convict they needed only concede to the greater wisdom of the government. That was an unfair choice to be offered.

In this case, in which credibility of witnesses was critical and probably determinative, the prosecutor's reference to her office and her associate may have appeared to the jury to provide a basis for conviction when all other evidence was dubious. Although the jurors may have been unable to resolve whether Sisto or McClain was telling the truth, they certainly could conclude that the attorney witness was truthful, even if only because the prosecutor told them that, as a government attorney and officer of the court, she would not lie.

I have little trouble concluding that the prosecutor's remarks were improper. Indeed, the government hardly argues otherwise.

We should not have to remind prosecutors of the relevant ABA Standard for Criminal Justice. Nevertheless, this commentary to Standard 3-5.8 is appropriate:

> Expressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony and tend to exploit the influence of the prosecutor's office and undermine the objective detachment that should separate a lawyer from the cause being argued.

ABA, Standard for Criminal Justice 3-5.8, Commentary (1980) (The Prosecution Function—Argument to the Jury).

The improper argument here is a special kind of personal opinion and another example of prosecutorial overkill. It exploited directly the influence of the government, in this case to bolster the testimony of the witness. Moreover, this type of improper argument is generated only when the prosecutor perceives the case personally, rather than acting in the role of an advocate for the public interest in a fair and impartial determination of guilt or innocence.

We cannot characterize this error as harmless. When he discharged the jurors, the trial judge described to them how credibility in the case had been "more highly focused" than usual.

Although we must reverse, I seriously question the defendant's failure to object. His counsel sat silently through the prosecutor's rebuttal summation, permitted the judge to instruct the jury, and said nothing as the jury retired. Only when the judge brought counsel together to work out an appropriate answer to the jury's questions was a mistrial motion offered.

We often have said that failure to object to improper argument waives any error. *See, e.g., United States v. Potter,* 616 F.2d 384, 393 n.16 (9th Cir. 1979), *cert. denied,* 449 U.S. 832, 101 S.Ct. 101, 66 L.Ed.2d 37 (1980). We review, if at all, because the misconduct sufficiently affects the trial to constitute plain error. *United States v. Berry,* 627 F.2d 193, 199 (9th Cir. 1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981). *See also United States v. Singleterry,* 646 F.2d 1014, 1018 (5th Cir. 1981); *United States v. Cox,* 633 F.2d 871, 875 (9th Cir. 1980), *cert. denied,* 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d 130 (1981).

We reach the issue in this case because the trial judge denied West's mistrial motion on the merits rather than on its untimeliness. *United States v. Dixon,* 562 F.2d 1138, 1143 (9th Cir. 1977).

We reverse, but we must be mindful that counsel have a duty to the court, an obligation at least to permit the judge to conduct a trial that finally determines the question at issue. A defendant may not remain silent in response to error and take his chances with the verdict before moving for a mistrial. Nor may he permit error to go unchallenged, then ask the appellate court to reverse the conviction.

West's counsel did not object as the prosecutor spoke. She gave the trial judge no opportunity to correct the error or lessen its impact, if that were possible. A judge must have a fair chance to admonish the jury to disregard improper statements, to give a curative instruction at the close of trial, or to take other steps to remove the taint.

Only after the jury retired to deliberate did the defendant complain. Defense counsel moved for a mistrial, but failed to ask to have the jury returned and instructed to disregard the prosecutor's improper remarks. Such a request would have given

the judge another opportunity to correct the error.

I have not concluded that the improper bolstering by the prosecutor necessarily could have been made harmless by a curative instruction, but neither do I conclude that it could not have been cured. Had the judge been given the chance to mitigate the damage, West may have been acquitted. Instead, he faces a third trial.

Judicial economy is not a phantom concern. As caseloads multiply and delay increases, we risk greater injustice from delay and hasty decisions. Trial and appellate judges bear the burden by taking on heavier workloads. Trial counsel must share the responsibility by asserting their rights at trial or not at all.

MEREDITH, District Judge, dissenting:

I disagree with Judge Fletcher's characterization of the statement made by counsel for defendant in her closing argument regarding the testimony of the Assistant United States Attorney. That statement did impugn the credibility of the Government's witness, albeit indirectly, and invited the prosecutor's remarks concerning the veracity of that witness.

Even if the prosecutor's remarks were improper, they nevertheless do not mandate reversal. The Constitution guarantees a fair trial, not a perfect one. To the extent that error is present, it is ordinarily incumbent upon the aggrieved party to make a timely objection. As Judge Wright notes, however, counsel for defendant in this case sat silently through the prosecutor's rebuttal summation, permitted the judge to instruct the jury, and said nothing as the jury retired. Defendant's counsel objected to the prosecutor's statements only after the case had been submitted to the jury, at which time there was little, if anything, the trial court could do to remove the taint. Under these circumstances, I believe that we are compelled to hold that any error was waived. I would therefore affirm defendant's conviction.